UNITED STATES FIDELITY & GUARANTY COMPANY, as Subrogee of Jewish Community Center and Fran Sterling, Petitioner,

v.

BUDGET RENT–A–CAR SYSTEMS, INC., Respondent.

No. 91SC739.

Supreme Court of Colorado, En Banc.

Dec. 1, 1992.

Rehearing Denied Jan. 11, 1993.

Dickinson, Everstine & Prud'Homme, Michelle R. Prud'Homme, Denver, for petitioner.

Richard W. Laugesen, Laird Campbell, Denver, amici curiae.

Cooper & Kelley, P.C., Elizabeth A. Starrs, John R. Mann, Denver, for respondent.

Justice MULLARKEY delivered the Opinion of the Court.

We granted certiorari to determine whether the court of appeals, in *United States Fidelity & Guaranty Co. v. Budget Rent–A–Car Systems, Inc.*, 829 P.2d 478 (Colo.App.1991), erred in holding that an automobile rental company's rental agreement, providing for liability and other automobile insurance coverages required by the Colorado Automobile Reparations Act, and the lessee's automobile insurance carrier were co-primary insurers, and whether the court of appeals erred in apportioning liability based upon policy limits. We disagree with the court of appeals' interpretation of the rental agreement and, accordingly, reverse and return this case to the court of appeals with directions to remand it to the district court for further proceedings consistent with this opinion. Because of our disposition of this issue, we do not address the question of the proper method to apportion liability between two co-primary insurers.

## I.

On August 6, 1986, Fran Sterling, an employee of the Jewish Community Center ("JCC"), was driving a van with several children in it when she was involved in an accident. JCC had rented the van from respondent, Budget Rent–A–Car Systems ("Budget"). Two of the children, Leo Elliott and Ken Broman, were seriously injured in the accident.

Budget, a self-insurer,[1] pursuant to section 10–4–716, 4A C.R.S. (1987), originally

---

**1.** Budget's briefs cite to and rely upon a number of decisions from Colorado and other jurisdic-

tions dealing with conflicts between two insurers, but none appears to deal with a conflict

refused to provide liability insurance coverage to JCC on the children's claims because the driver of the van was only twenty years old. Budget asserted that this violated the "Authorized Driver" provision of the rental agreement between JCC and Budget (the "Rental Agreement").[2] According to the Rental Agreement, a driver was required to be at least twenty-one years of age to be an "Authorized Driver."

Petitioner, United States Fidelity & Guaranty Company ("USF & G"), was JCC's automobile insurer. USF & G investigated the loss. Although it believed that it was required only to provide excess coverage to JCC, USF & G realized that the loss was in excess of Budget's limits, which were the state mandatory minimum of $25,000 per person, and $50,000 per accident. USF & G settled the claims of the two children for $148,328.68, and filed an action as subrogee for Fran Sterling and JCC against Budget for contribution or equitable apportionment, seeking the $50,000 liability limit from Budget.

In the trial court, USF & G moved for summary judgment and Budget moved for a determination of law, both as to the primacy of Budget's and USF & G's liability coverage. The trial court, finding that the Budget Rental Agreement and the USF & G insurance policies contained mutually repugnant excess insurance clauses, held that Budget and USF & G were co-primary insurers and apportioned equally the loss up to the lower policy's limits.[3] The court of appeals, in *United States Fidelity & Guaranty Co. v. Budget Rent–A–Car Systems, Inc.*, 829 P.2d 478 (Colo.App.1991), affirmed the trial court's ruling that the two were co-primary insurers, but held that the loss should be apportioned proportionately to the policy limits. USF & G's policy limits were $1,000,000, while Budget's limits were $50,000. Under this apportionment, Budget, whose $50,000 limit is 1/21st of the total combined liability limit, would be required to reimburse USF & G $7,063.27, which is 1/21st of the total loss.

USF & G petitioned this court for certiorari on both the primacy issue and the apportionment issue. We reverse the judgment of the court of appeals and hold that Budget's coverage is purely primary in this case and that USF & G's coverage is purely excess. Because of our disposition of this issue, we need not reach the issue of the proper apportionment of liability between co-primary insurers.

## II.

At issue is the interpretation of two contracts, the Budget Rental Agreement,[4] and the USF & G insurance

---

between a self-insurer who is also an owner of a motor vehicle and an insurance company. While this distinction may be a relevant one, the parties do not rely on this distinction, and we need not rely on this distinction to dispose of this case.

2. The relevant portion of the Rental Agreement is reproduced as Appendix A to this opinion.

3. From the record, it appears that Budget did not raise the issue that its coverage may be limited by an excess clause until suit had been filed. By letter to JCC dated August 15, 1986, from Transamerica Insurance Services, on behalf of Budget, Budget denied coverage and tendered coverage to USF & G. Budget did not reserve its rights regarding the coverage conflict until a letter dated March 11, 1987, nearly seven months later, even though it is clear from the coverage tender that Budget knew about the USF & G policy. An insurer should raise (or at least reserve) all defenses within a reasonable time after learning of such defenses, or those defenses may be deemed waived or the insurer may be estopped from raising them. *See* Allan D. Windt, *Insurance Claims and Disputes* §§ 2.23–2.24 at 68–75 (2d ed. 1988); *see also Colard v. American Family Mut. Ins. Co.*, 709 P.2d 11, 15 (Colo.App.1985) (insurer waived right to assert failure to forward suit papers because it denied liability on basis of coverage only, and only asserted notice defense after institution of declaratory judgment action). USF & G, as subrogee for JCC and Fran Sterling, would be in the position to assert such a waiver or estoppel but has not done so here.

4. Much of the argument in the briefs of counsel and at oral argument treats the Rental Agreement as if it were an insurance policy. It is still an open question in this state whether a colli-

policy.[5] The proper construction of unambiguous contracts is a question of law, and the determinations of the court of appeals and the trial court are not binding on this court. *Pepcol Mfg. Co. v. Denver Union Corp.*, 687 P.2d 1310, 1313–14 (Colo.1984); *Robert A. McNeil Corp. v. Paul*, 757 P.2d 165, 166 (Colo.App.1988). Where the terms of a contract are ambiguous, they must be strictly construed against the party drafting the contract. *American Family Mut. Ins. Co. v. Johnson*, 816 P.2d 952, 953 (Colo.1991); *Green Shoe Mfg. Co. v. Farber*, 712 P.2d 1014, 1016 (Colo.1986).

In the "Other Insurance"[6] section of the USF & G policy, the policy provides, in relevant part:

1. For any covered **auto you** own this policy provides primary insurance. For any covered **auto you** don't own, the insurance provided by this policy is excess over any other collectible insurance.[7]

(Emphasis in original.) This provision unambiguously provides that the USF & G policy provides excess insurance coverage over any collectible insurance for automobiles covered by the policy which are not owned by the insured person. There is no question that the van involved in the accident was a covered automobile under the USF & G policy. The van, however, was not owned by JCC, so the USF & G policy provides only excess coverage for the accident at issue here.

The Budget Rental Agreement provides, in relevant part:

6) LIABILITY INSURANCE: IF THERE IS NO VIOLATION OF ANY OF THE USE RESTRICTIONS IN PARAGRAPH 5 ABOVE, Renter and any Authorized Driver shall, while operating the Vehicle, be provided with liability coverage in accordance with the standard provisions of a Basic Automobile Liability Insurance Policy or in accordance with the requirements of a qualified self-insurer instead of such coverage, for protection against liability for causing bodily injury (including death) and property damage with one of the following applicable coverage limits:

—coverage limits which are required by the state financial responsibility law or other legal responsibility where this rental transaction takes place; OR

—coverage limits of $100,000 for each person, but not more than $300,000 for each occurrence, and property damage limits of up to $25,000 for each occurrence if Renter, at time of rental, possessed valid Budget Corp Rate credentials or Sears Checklist Charge Card credentials.

A. All coverages automatically conform to the basic requirements of any "No-Fault" law which may be applica-

---

sion damage waiver is an insurance contract. *See Davis v. M.L.G. Corp.*, 712 P.2d 985, 986 (Colo.1986). The Rental Agreement does not represent itself as an insurance contract, although it purports to insure Authorized Drivers "in accordance with the standard provisions of a Basic Automobile Liability Insurance Policy." Rental Agreement ¶ 6.

5. The USF & G policy appears to be a standard Business Auto Policy on a form drafted by the Insurance Services Office. *See* Susan J. Miller & Philip Lefebvre, *Miller's Standard Insurance Policies Annotated* 259 (1991) (1990 version of the same policy, with identical applicable provisions).

6. *See Allstate Ins. Co. v. Frank B. Hall & Co.*, 770 P.2d 1342, 1345–46 (Colo.App.1989), for a succinct explanation of the various types of "other

insurance" provisions in insurance policies which have created a "court's nightmare."

7. Before the trial court, Budget argued that an endorsement to the USF & G policy made the USF & G policy co-primary with Budget's coverage. This endorsement provides, *in relevant* part:

**Any auto** described in this endorsement will be considered a covered **auto you** own and not a covered **auto you** hire, borrow or lease under the coverage for which it is a covered **auto.**

(emphasis in original). The record appears to indicate that the van was not within the scope of this endorsement, and therefore the endorsement does not apply in this case. Regardless, Budget did not argue the effect of this endorsement before this court.

ble. RENTER WAIVES UNINSURED AND UNDERINSURED MOTORIST, SUPPLEMENTAL NO-FAULT AND OTHER OPTIONAL COVERAGES.

B. If any coverages herein cannot be excluded or waived, Renter agrees that such coverages shall be automatically reduced to the minimum requirements of any financial responsibility or other applicable law and that such coverages shall be excess to any other applicable insurance.

C. Renter agrees to cooperate fully in the investigation and defense of and to deliver to the renting location every document relating to any accident, claim or lawsuit.

D. Renter will defend and indemnify the renting location, Budget and Sears from all loss, liability and expense in excess of the coverages available under the terms of this Agreement.

The outcome of this case is determined by the correct interpretation of this provision of the Rental Agreement.

Budget does not argue before this court that there was a violation of any use restriction in paragraph 5 of the Rental Agreement.[8] *See Bukulmez v. Hertz Corp.,* 710 P.2d 1117, 1120 (Colo.App.1985), *rev'd on other grounds sub nom. Blue*

*Cross v. Bukulmez,* 736 P.2d 834 (Colo. 1987) ("[O]nce the owner has knowledge that the car will be driven on public highways and gives permission for it to be so driven, coverage is required under the [Colorado Auto Accident Reparations] Act, unless the exclusions of § 10–4–712, C.R.S., apply."). Because this condition is fulfilled, JCC and any "Authorized Driver"[9] are provided with automobile liability insurance coverage, in accordance with either the standard provisions of a basic automobile liability insurance policy or the requirements of a qualified self-insurer. *See* § 10–4–716, 4A C.R.S. (1987); *see also* § 10–4–705(1), 4A C.R.S. (1987) ("Every owner of a motor vehicle who ... knowingly permits the operation of the motor vehicle on the public highways of this state shall have in full force and effect a complying policy under the terms of this part 7...."). According to the Rental Agreement, the coverage limits provided to JCC were the state mandatory minimum limits of $25,000 per person and $50,000 per occurrence. § 10–4–706, 4A C.R.S. (1987).

Colorado requires uninsured (and underinsured) motorist coverage, but such coverage may be waived in writing. § 10–4–609(1), 4A C.R.S. (1987). Colorado does not require supplemental no-fault or other optional coverages. Pursuant to subpara-

---

**8.** Paragraph 5 of the Rental Agreement provides:

5) **USE RESTRICTIONS: Vehicle will not be used or operated by anyone:**
A. **Who has obtained the Vehicle by using false or misleading information; or**
B. **Who is not capable of safely driving the Vehicle due to alcohol, drugs, drowsiness, or otherwise; or**
C. **To transport people or property for compensation; or**
D. **In any race, training activity, contest or for any illegal purpose; or**
E. **To push or tow any vehicle or other object; or**
F. **In any abusive or reckless manner; or**
G. **On other than regularly maintained roadways; or**
H. **In Mexico, without the prior written permission of the renting location.**
(Emphasis in original.)
Whether a motor vehicle owner can validly limit or condition insurance coverage by such "use restrictions" in light of the court of appeals'

decision in *Bukulmez v. Hertz Corp.,* 710 P.2d 1117 (Colo.App.1985), *rev'd on other grounds sub nom. Blue Cross v. Bukulmez,* 736 P.2d 834 (Colo.1987), is not before us in this case.

**9.** The Rental Agreement defines "Authorized Driver":

In addition to Renter, the Vehicle may be driven by any Additional Driver who is named on the face of this Agreement; by a licensed driver who is a member of Renter's immediate family and permanently resides in Renter's household and who is twenty-one (21) or over; or by a licensed driver who is a business partner or fellow employee of Renter and is twenty-one (21) or over, where such driving is incidental to business duties. These are the only "Authorized Drivers" who may drive the Vehicle.

Although the record indicates that Budget relied on this provision before the court of appeals and in the trial court, Budget does not argue before this court that Fran Sterling was not an "Authorized Driver."

graph 6(A) of the Rental Agreement, JCC agreed to waive uninsured (and underinsured) motorist coverage, as well as other supplemental and optional coverages.

At the center of this case is the interpretation of subparagraph 6(B) of the Rental Agreement. According to the court of appeals, this is an all-purpose "other insurance" clause. The trial court, however, followed a different rationale. It agreed with Budget's argument that the excess clause of 6(B) applied only because, although the Authorized Driver provision was violated, the Colorado Auto Accident Reparations Act [10] did not permit such liability coverage to be waived or excluded based on JCC's violation of the Rental Agreement. This argument has not been made before this court.[11] Because Budget now has conceded that Fran Sterling was an "Authorized Driver," the trial court's

rationale for applying the excess insurance provision of 6(B) cannot endure scrutiny.[12]

 Budget's sole argument before this court regarding the applicability of the excess insurance provision in the Rental Agreement is that the provision is a standard, unconditional "other insurance" clause.[13] This argument is not supported by the language of the purported "other insurance" clause. The meaning of a contract is found by examination of the entire instrument and not by viewing clauses or phrases in isolation. *Kuta v. Joint Dist. No. 50(J)*, 799 P.2d 379, 382 (Colo.1990). Each *word* in an instrument is to be given meaning if at all possible. *Ramsey v. Nordloh*, 143 Colo. 526, 528, 354 P.2d 513, 514 (1960). With these basic principles of contract interpretation in mind, it is clear that subparagraph 6(B) of the Rental Agreement is applicable *only* "[i]f any coverages herein cannot be excluded or

---

**10.** §§ 10–4–701—10–4–725, 4A C.R.S. (1987 and 1992 Supp.).

**11.** We would be inclined to reject this argument even if it had been made before us. "Clauses in a contract of insurance which attempt to dilute, condition, or limit statutorily mandated coverage are invalid or void." *Meyer v. State Farm Mut. Auto. Ins. Co.*, 689 P.2d 585, 589 (Colo. 1984).

**12.** At oral argument, it was clear that Budget had abandoned any reliance on the fact that Fran Sterling was not twenty-one years old, because counsel for Budget called it a "red herring."

**13.** We note that Budget's argument has an ironic consequence. Paragraph 6 of the Rental Agreement provides that a customer who possesses corporate credentials or Sears Checklist Charge Card credentials is entitled to increased liability limits of $100,000 per person, and $300,000 per occurrence. Under Budget's argument to this court, a Budget customer who possesses such preferred customer credentials, but who also has separate insurance, would lose not only Budget's primary liability coverage, but *also* the increased liability limits. This "preferred customer" provision is not at issue in the present case.

Divining Budget's positions on the issues before us is made difficult by the fact that Budget's argument has changed at nearly every stage of this litigation. Prior to entering into litigation, Budget denied coverage because it alleged that JCC had breached the "Authorized Driver" provision of the Rental Agreement.

Faced with the court of appeals' decision in *Bukulmez*, Budget's position shifted. Before the trial court and the court of appeals, Budget argued the applicability of a *conditional* excess clause, saying that "Pursuant to paragraph 6, which extends liability insurance coverage only to 'Authorized Drivers', the Rental Agreement, on its face, purports to deny liability insurance coverage to the Renter when the rental vehicle is being operated by a driver younger than 21 at the time of the accident. *Nevertheless, the Budget Rental Agreement contained a so-called 'excess' or other insurance clause, which provided for the event that Budget could not legally deny coverage.*" [emphasis added]. Appellant's Opening Brief, at 4–5.

After the court of appeals held that the excess insurance clause was *unconditional*, Budget's position again shifted, accordingly, as shown from its argument in opposition to USF & G's petition for writ of certiorari: "As the Court of Appeals correctly determined, this excess clause was not dependent on compliance by the Renter with the provisions of the Rental Agreement: 'The inability of Budget to exclude or waive coverage *will not invoke the excess clause.* Rather, it will become effective only if there exists "other applicable insurance." ' 829 P.2d at 479. Hence, Petitioner's and *Amici*'s argument concerning Budget's attempt to condition coverage on compliance with the use restrictions in the Rental Agreement is completely irrelevant." [emphasis added]. Opposition to Petition for Writ of Certiorari at 1–2.

It is clear that Budget is now arguing in this court that the clause is a regular, unconditional "other insurance" clause. We find that it is not.

waived." The *only* provision in the Rental Agreement which relates to the exclusion or waiver of insurance coverages is 6(A), concerning uninsured, underinsured, supplemental no-fault, and other optional coverages. Thus, the condition precedent to the application of the operative portion of subparagraph 6(B) *only* relates to the coverages named in 6(A). The coverages listed in 6(A) are optional, but in many jurisdictions can be waived. In some jurisdictions, as in Colorado regarding uninsured motorist coverage, such a waiver of coverage must be written.[14] *See* 2 Alan I. Widiss, *Uninsured and Underinsured Motorist Insurance* App. A at 400–01 (2d ed. 1992) (chart).

Subparagraph 6(B) of the Rental Agreement, which automatically reduces coverage to the state mandatory minimum and makes such coverage excess, applies only if the condition that "any coverages herein cannot be excluded or waived" is satisfied. Here, the coverage at issue is basic *liability* coverage for JCC and Fran Sterling, not uninsured or underinsured motorist coverage, or supplemental no-fault coverage. Earlier in paragraph 6 of the Rental Agreement, this liability coverage is already deemed to be the statutory minimum coverage and in compliance with either the provisions of a standard automobile liability insurance policy or the requirements for a self-insurer. Before us, Budget does not argue that there is any issue of basic liability coverage being either excluded or waived. Indeed, the purpose of paragraph 6 of the Rental Agreement was to provide basic liability insurance coverage. Therefore, subparagraph 6(A) of the Rental Agreement, and the "excess insurance"

clause of subparagraph 6(B), have no application to the case at bar.

■ Because the Budget Rental Agreement does not provide for Budget's coverage to be excess if any other insurance applies in the facts and circumstances of the present case, and because the Colorado Auto Accident Reparations Act requires every owner of a motor vehicle to have liability insurance coverage for bodily injury and property damage, Budget's coverage here is primary coverage.[15] Because USF & G's insurance policy explicitly provides that coverage for non-owned vehicles is to be excess over any other collectible insurance, USF & G's coverage here is purely excess coverage.

### III.

Because of our interpretation of Budget's Rental Agreement, we do not address the apportionment issue. We reverse and return this case to the court of appeals with directions to remand it to the district court for further proceedings consistent with this opinion.

KIRSHBAUM, J., specially concurs, and QUINN, J., joins the special concurrence.

### APPENDIX A

### ADDITIONAL TERMS OF RENTAL

The Renter agrees to all terms on both sides of this Agreement.

1) **VEHICLE:** The Vehicle, which includes tires, tools, equipment, accessories and Vehicle documents, does not belong to Renter, but is delivered to Renter for rental purposes only and is in good operating condition. **THERE IS NO**

---

**14.** In fact, in certain jurisdictions, uninsured motorist coverage cannot be waived. In oral argument, counsel for USF & G informed the court that New Mexico was such a jurisdiction. *See* N.M.Stat.Ann. § 66–5–301 (Michie 1992). In such a case, we would presume that, under the Rental Agreement, such coverage would be deemed to be the state's mandatory minimum and would be excess over any other applicable uninsured motorist coverage.

**15.** Our conclusion is based on the plain language of the Rental Agreement. Even if the terms of the Rental Agreement were ambiguous,

we still would have concluded that the Rental Agreement provided primary coverage because any ambiguity must be construed against Budget as the drafter. Given our analysis, we need not hold today that a motor vehicle owner's liability insurance is required to be "primary" coverage. Furthermore, although USF & G and *Amici* urge us to address this question, we do not need to reach the question of whether the Colorado Auto Accident Reparations Act requires the owner's liability coverage necessarily to be primary coverage.

WARRANTY OF ANY KIND, EX-PRESS OR IMPLIED, AS TO THE MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE OF ANY VEHICLE COVERED BY THIS AGREEMENT.

2) **VEHICLE RETURN:** Renter will return the Vehicle in the same good operating condition to the place and on the due back date specified, or sooner upon demand.

3) **REPOSSESSION OF VEHICLE:** The Vehicle may be repossessed, at Renter's cost and without notice if it is not returned on the due back date, is illegally parked, used in violation of law or of this Agreement, appears to be abandoned, or if Renter gave false or misleading information at time of rental.

4) **AUTHORIZED DRIVERS:** In addition to Renter, the Vehicle may be driven by any Additional Driver who is named on the face of this Agreement; by a licensed driver who is a member of Renter's immediate family and permanently resides in Renter's household and who is twenty-one (21) or over; or by a licensed driver who is a business partner or fellow employee of Renter and is twenty-one (21) or over, where such driving is incidental to business duties. These are the only "Authorized Drivers" who may drive the Vehicle.

5) **USE RESTRICTIONS: Vehicle will not be used or operated by anyone:**

A. **Who has obtained the Vehicle by using false or misleading information; or**

B. **Who is not capable of safely driving the Vehicle due to alcohol, drugs, drowsiness, or otherwise; or**

C. **To transport people or property for compensation; or**

D. **In any race, training activity, contest or for any illegal purpose; or**

E. **To push or tow any vehicle or other object; or**

F. **In any abusive or reckless manner; or**

G. **On other than regularly maintained roadways; or**

H. **In Mexico, without the prior written permission of the renting location.**

6) **LIABILITY INSURANCE: IF THERE IS NO VIOLATION OF ANY OF THE USE RESTRICTIONS IN PARAGRAPH 5 ABOVE,** Renter and any Authorized Driver shall, while operating the Vehicle, be provided with liability coverage in accordance with the standard provisions of a Basic Automobile Liability Insurance Policy or in accordance with the requirements of a qualified self-insurer instead of such coverage, for protection against liability for causing bodily injury (including death) and property damage with one of the following applicable coverage limits:

—coverage limits which are required by the state financial responsibility law or other legal responsibility where this rental transaction takes place; OR

—coverage limits of $100,000 for each person, but not more than $300,000 for each occurrence, and property damage limits of up to $25,000 for each occurrence if Renter, at time of rental, possessed valid Budget Corp Rate credentials or Sears Checklist Charge Card credentials.

A. All coverages automatically conform to the basic requirements of any "No-Fault" law which may be applicable. RENTER WAIVES UNINSURED AND UNDERINSURED MOTORIST, SUPPLEMENTAL NO-FAULT AND OTHER OPTIONAL COVERAGES.

B. If any coverages herein cannot be excluded or waived, Renter agrees that such coverages shall be automatically reduced to the minimum requirements of any financial responsibility or other applicable law and that such coverages shall be excess to any other applicable insurance.

C. Renter agrees to cooperate fully in the investigation and defense of and to deliver to the renting location every document relating to any accident, claim or lawsuit.

D. Renter will defend and indemnify the renting location, Budget and Sears from all loss, liability and expense in excess of the coverages available under the terms of this Agreement.

7) **FIRE, THEFT OR COMPREHENSIVE DAMAGE:** Renter is not responsible for accidental loss of, or damage to, the Vehicle due to fire, theft, or any comprehensive peril, except Renter is liable for theft and damage up to the full value of the Vehicle if Renter or any Authorized Driver:

A. Breaches any provision of this Agreement; or

B. Allows an unauthorized driver to operate the Vehicle; or

C. Fails to report Vehicle theft or damage to the renting location and local police authority within 24 hours; or

D. Allows another person, including any Authorized Driver, to come into possession of the Vehicle, or the keys to the Vehicle, and the Vehicle is not returned on the due back date.

8) **COLLISION DAMAGE:** Renter is responsible for $3,000.00 (or other amount written on the reverse side) of collision damage to the vehicle, unless Renter has accepted Collision Damage Waiver ("CDW"). However, even if CDW has been accepted, Renter is still responsible for reasonable loss of use of and collision damage to the vehicle if Renter or any Authorized Driver:
i) Breaches any use restriction described in Paragraph 5 above; or
ii) Allows an unauthorized driver to operate the vehicle; or
iii) Fails to report collision damage to the renting location and local police authority within 24 hours.

9) **DAMAGED VEHICLE:** Renter will not use the Vehicle if it is damaged or in need of repair and will be responsible for all damage to the Vehicle resulting from such use.

10) **PARKING VIOLATIONS:** Renter will pay for all parking violation fines and penalties plus all costs incurred in the event Renter fails to make such payments. Renter agrees that in connection with any claimed violations, any information relating to Renter may be submitted to governmental authorities.

11) **PAYMENT:**

A. Renter will pay on demand all charges due under this Agreement.

B. All charges are subject to final audit, and if an error is found, either party shall promptly pay or credit the other, as appropriate, to correct the error.

C. If Renter has indicated that someone else or that some company will pay for charges due under this Agreement and payment is not made, Renter will pay upon demand.

D. Renter consents to the reservation of credit, by a credit card issuer, up to the amount of the estimated charges due under this Agreement and authorizes the renting location to process a credit card voucher, if applicable, in Renter's name, for all charges due under this Agreement.

E. Renter will pay interest at the highest rate permitted by law on any past due charges and will also pay any collection costs, including reasonable attorney's fees, if all charges are not paid when due.

12) **RENTER RESPONSIBILITY FOR PROPERTY:** Renter is solely responsible for any property left or stored in the Vehicle, shuttle bus, or anywhere at the renting location, no matter who received, stored or handled the property.

13) **FAILURE TO RETURN VEHICLE:** If Renter fails to return the Vehicle on the due back date or within 24 hours following a written or oral demand to Renter (which demand, if in writing, shall be considered delivered forty-eight (48) hours after the mailing of a certified letter addressed to the residence or business address of Renter as shown on the reverse side), Renter will be deemed to be in unlawful possession

of the Vehicle and to have authorized the issuance of a warrant for the arrest of Renter or any person possessing the Vehicle.

14) **VEHICLE REPAIRS:** Renter will not permit any repair to or replacement of any part on the Vehicle without the prior consent of the renting location and Renter agrees to pay for all such unauthorized repairs and parts.

15) **MISCELLANEOUS:**

A. Renter will pay all costs including reasonable attorneys fees and court costs incurred by the renting location, Budget and Sears, and will defend and indemnify these parties from all claims, demands and lawsuits resulting from:

1) the issuance of a warrant for the arrest of Renter or any person operating the Vehicle; and

2) any action by the renting location, including self-help, used to get the Vehicle back or otherwise enforce the terms of this Agreement; and

3) any action against the renting location, Budget or Sears resulting from Renter's breach of this Agreement.

B. The renting location, Budget and Sears shall have no liability for any indirect, special or consequential damages arising in connection with the furnishing, performance or use of the Vehicle or for any claim based upon the failure to honor a vehicle reservation requested by Renter.

C. Renter shall not be considered the agent or employee of the renting location, Budget or Sears for any purpose whatsoever.

D. Renter agrees to everything stated on both sides of this Agreement, which is the entire Agreement between the parties. Renter agrees that this Agreement can only be changed in writing and if signed or initialed by both the renting location and Renter.

THE BUDGET/SEARS OPERATION RENTING THE VEHICLE COVERED BY THIS AGREEMENT IS AN INDEPENDENTLY OWNED AND OPERATED LICENSEE OF THE BUDGET RENT-A-CAR FRANCHISE SYSTEM

Justice KIRSHBAUM specially concurring:

The majority states that the "outcome of this case is determined by the correct interpretation of [paragraph 6] of the Rental Agreement." Maj. op. at 212. I agree that construction of the language of the liability insurance provision of the rental agreement is critical and that under such provision Budget must provide primary coverage to JCC. However, I disagree with the majority's analysis of that provision. I find the terms of paragraph 6 ambiguous, and therefore conclude that the contract must be construed against Budget. To the extent the liability insurance provision purports to constitute a standard excess insurance clause, as Budget argues, it is unenforceable because contrary to the public policy of this state as articulated by the Colorado Auto Reparations Act, §§ 10–4–701 to –725, 4A C.R.S. (1987) (hereafter the Act).

The liability insurance provision in question contains the following language:

6) **LIABILITY INSURANCE:** IF THERE IS NO VIOLATION OF ANY OF THE USE RESTRICTIONS IN PARAGRAPH 5 ABOVE, Renter and any Authorized Driver shall, while operating the Vehicle, be provided with liability coverage in accordance with the standard provisions of a Basic Automobile Liability Insurance Policy or in accordance with the requirements of a qualified self-insurer instead of such coverage, for protection against liability for causing bodily injury (including death) and property damage with one of the following applicable coverage limits:

—coverage limits which are required by the state financial responsibility law or other legal responsibility where this rental transaction takes place; OR

—coverage limits of $100,000 for each person, but not more than $300,000 for each occurrence, and property damage limits of up to $25,000 for each occurrence if Renter, at time of rental, possessed valid Budget Corp. Rate credentials or Sears Checklist Charge Card credentials.

A. All coverages automatically conform to the basic requirements of any "No–Fault" law which may be applicable. RENTER WAIVES UNINSURED AND UNDERINSURED MOTORIST, SUPPLEMENTAL NO–FAULT AND OTHER OPTIONAL COVERAGES.

B. If any coverages herein cannot be excluded or waived, Renter agrees that such coverages shall be automatically reduced to the minimum requirements of any financial responsibility or other applicable law and that such coverages shall be excess to any other applicable insurance.

C. Renter agrees to cooperate fully in the investigation and defense of and to deliver to the renting location every document relating to any accident, claim or lawsuit.

D. Renter will defend and indemnify the renting location, Budget and Sears from all loss, liability and expense in excess of the coverages available under the terms of this Agreement.

The Court of Appeals interpreted subparagraph 6(B) of the rental agreement to constitute an "excess clause" that becomes effective if other applicable insurance exists. *United States Fid. & Guar. Co. v. Budget Rent–A–Car Sys., Inc.*, 829 P.2d 478, 479 (Colo.App.1991). The majority concludes that subparagraph 6(B) constitutes an excess clause that *"only* relates to the coverages named in 6(A)," Maj. op. at 214 (emphasis in the original), and that subparagraphs 6(A) and 6(B) "have no application to the case at bar." Maj. op. at 214. I do not understand the majority's statement that neither subparagraph is applicable to the question of whether Budget

must provide primary liability insurance coverage to JCC. However, because both interpretations are plausible, I conclude that the language of subparagraph 6(B) is ambiguous.

For purposes of this appeal,[1] the introductory portion of paragraph 6 in essence requires Budget to provide "liability coverage" to JCC in conformity with one of two specified "coverage limits." The first sentence of subparagraph 6A establishes that "all coverages" are in conformity with the basic requirements of applicable "No–Fault law[s]." The words "all coverages" refer generally to the liability and property damage coverages described in the introductory portions of the paragraph as well as to the waived coverages referred to in the second sentence of subparagraph 6(A). The second sentence of subparagraph 6(A) provides that JCC waives specified coverages: uninsured motorist, underinsured motorist, supplemental no-fault and "other optional" coverages. In Colorado, although underinsured and uninsured coverages may be waived, minimal liability coverage cannot be waived by an automobile insurance purchaser or a self-insured motor vehicle owner. §§ 10–4–705(1) and –706(1)(a), 4A C.R.S. (1987); *see Allstate Ins. Co. v. Allen*, 797 P.2d 46, 49 (Colo.1990). Subparagraph 6(A) thus distinguishes between specified coverages that JCC waived and non-optional coverages that JCC could not waive.

Subparagraph 6(B) provides that "[i]f any coverages herein cannot be excluded or waived," JCC agrees that "such coverages" shall be reduced to specified minimums and that "such coverages" shall be excess to any other applicable insurance. The majority concludes, without explaining the basis for such conclusion, that the words "coverages herein" appearing in subparagraph 6(B) apply only to the waived coverages specified in paragraph 6(A). Given the careful distinction between non-waived and waived coverages in subparagraph 6(A) and the repeated references to liability cover-

1. As the majority notes, the parties have abandoned issues regarding possible violations by

JCC of the rental agreement's "use restrictions" provisions. Maj. op. at 212.

age throughout paragraph 6,[2] it is equally plausible that the words "coverages herein" appearing in subparagraph 6(B) refer to all the diverse coverages described in the entire paragraph. This latter construction requires the conclusion that in circumstances such as are here presented, wherein basic liability coverage cannot be excluded or waived, Budget is required to furnish only excess coverage to JCC. This construction, based on an analysis of paragraph 6 as a whole, is at the least as persuasive as the majority's conclusion that the words "coverages herein" in subparagraph 6(B) apply only to the four categories of waived coverages specified in the second sentence of subparagraph 6(A).[3]

In view of this linguistic muddle, I conclude that the language of subparagraph 6(B) is ambiguous. When contract terms are ambiguous, they must be strictly construed against the party drafting the instrument. *Green Shoe Mfg. Co. v. Farber*, 712 P.2d 1014, 1016 (Colo.1986); *Perl–Mack Enters. Co. v. Denver*, 194 Colo. 4, 568 P.2d 468 (1977); *Christmas v. Cooley*, 158 Colo. 297, 406 P.2d 333 (1965). Therefore, Budget's assertion that subparagraph 6(B) constitutes a standard excess coverage clause cannot be sustained. Rather the rental agreement must be construed in favor of JCC, requiring Budget as the drafter thereof to provide primary insurance coverage to JCC.

If, as Budget contends, subparagraph 6(B) constitutes a standard excess coverage clause, it is unenforceable because contrary to this state's legislatively pronounced public policy. As the owner of a motor vehicle, Budget is required to carry compulsory liability coverage by the express terms of the Act. Section 10–4–705 of the Act states in pertinent part as follows:

**Coverage compulsory.** (1) Every owner of a motor vehicle who operates the motor vehicle on the public highways of this state or who knowingly permits the operation of the motor vehicle on the public highways of this state shall have in full force and effect a complying policy under the terms of this part 7 covering the said motor vehicle....

§ 10–4–705(1), 4A C.R.S. (1987). A complying policy is defined as one containing "[l]egal liability coverage for bodily injury or death arising out of the use of the motor vehicle to a limit, exclusive of interest and costs, of twenty-five thousand dollars to any one person and fifty thousand dollars to all persons in any one accident...." § 10–4–706(1)(a), 4A C.R.S. (1987). An "insured" for purposes of liability coverage includes "any person using the described motor vehicle with the permission of the named insured." § 10–4–703(6), 4A C.R.S. (1987).

These statutory provisions require the owner of a motor vehicle who knowingly permits the vehicle to be operated by any driver on the public highways of this state to acquire minimum liability insurance for that vehicle. Budget owned the automobile involved in the accident and knowingly permitted JCC to operate it. The fact that Budget elected to self-insure its vehicles is

---

**2.** The construction of the words "coverages herein" to refer to all coverages prescribed in paragraph 6, whether mandatory, waivable or excludable, is reinforced by the reference in subparagraph 6(D) to the "coverages" provided by the rental agreement.

**3.** The Court of Appeals concluded that under the plain language of subparagraph 6(B) Budget must be deemed a primary insurer, as the following portion of its opinion indicates:

The inability of Budget to exclude or waive coverage will not invoke the excess clause. Rather, it will become effective only if there exists "other applicable insurance."

*United States Fid. & Guar. Co. v. Budget Rent–A–Car Sys., Inc.*, 829 P.2d 478, 479 (Colo.App.1991).

This third construction of the rental agreement assumes that the first clause of subparagraph 6(B) refers solely to the ability of Budget to waive coverages and is not material to the determination of under what circumstances Budget may furnish excess rather than primary coverage. Given these assumptions, the Court of Appeals understandably did not find subparagraph 6(A)'s reference to JCC's waiver of specified coverages to constitute any limitation on subparagraph 6(B). The Court of Appeals concluded that the second clause of subparagraph 6(B) permits Budget to furnish excess coverage to a renter whenever any coverage of any kind provided by a commercial insurer or a self-insurer is applicable.

immaterial; self-insurers must comply with the standards applicable to commercial insurers with respect to liability responsibility. § 10–4–716, 4A C.R.S. (1987).

The Act is designed to avoid inadequate compensation to automobile accident victims and to expedite payments due to such victims. *See Allstate Ins. Co. v. Allen,* 797 P.2d 46, 49 (Colo.1990). In furtherance of these goals, the Act requires every motor vehicle owner to maintain an automobile insurance policy providing minimal levels of personal injury protection benefits to accident victims without regard to fault. *American Standard Ins. Co. v. Ekeroth,* 791 P.2d 1220, *cert. denied,* 797 P.2d 1299 (Colo.1990). These policies and statutory provisions in essence require motor vehicle owners to assume direct and primary responsibility for personal injuries resulting to others from the authorized operation of such motor vehicles, to the extent mandated by the Act. In my view, Budget's effort to evade its responsibility of providing primary coverage to JCC for personal injuries resulting from the authorized operation of Budget's automobile is contrary to the public policy evidenced by the Act. The contractual terms in question are, therefore, unenforceable.

For the foregoing reasons, which differ from those articulated by the majority, I concur in the conclusion that in this case Budget must provide primary coverage to JCC.

I am authorized to say that Justice QUINN joins in this special concurrence.