**DENVER CLASSROOM TEACHERS ASSOCIATION, Plaintiff–Appellant,**

v.

**SCHOOL DISTRICT NO. 1 IN the CITY AND COUNTY OF DENVER, State of Colorado, and the Board of Education of School District No. 1, Defendants–Appellees,**

**and**

**State of Colorado ex. rel. Gale A. Norton as Attorney General of the State of Colorado, Intervenor/Appellee.**

**No. 94CA1177.**

Colorado Court of Appeals, Div. IV.

Nov. 24, 1995.

Rehearing Denied Jan. 11, 1996.

Martha R. Houser, Colorado Education Association, Aurora, for Plaintiff–Appellant.

William J. Maikovich, Aurora, for Plaintiff–Appellant.

Semple & Jackson, P.C., Martin Semple, Franklin A. Nachman, Michael H. Jackson, Patrick B. Mooney, Denver, for Defendants–Appellees.

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, William E. Thro, Assistant Attorney General, Denver, for Intervenor–Appellee.

Opinion by Judge TAUBMAN.

In this action alleging breach of a collective bargaining agreement, plaintiff, Denver Classroom Teachers Association (DCTA), appeals from a summary judgment entered in favor of defendants, School District # 1 in the City and County of Denver and its governing body the Board of Education of School District # 1 (collectively the District). We affirm.

DCTA is the exclusive bargaining representative for approximately 4,000 employees of the Denver Public Schools, and the dispute here concerns DCTA's contention that the District violated the parties' multi-year collective bargaining agreement when it failed to implement the final phase of a salary increase for teachers set forth in that agreement. DCTA makes three claims: (1) that the District breached the contract by failing to implement the last phase of the salary increases; (2) that the District similarly violated a specific Board of Education policy when it refused to implement the salary increase; and (3) that, to the extent that the District relied upon § 22–32–110(5), C.R.S. (1995 Repl.Vol. 9) to reopen the contract unilaterally, that statute is unconstitutional.

In deciding the parties' cross-motions for summary judgment, the district court found the following facts to be undisputed:

Beginning in the latter half of 1990 and concluding in the beginning of 1991, the parties negotiated a multi-year collective bargaining agreement which was effective January 1, 1991, and expired August 31, 1994. This contract covered many areas including provisions relating to salary and benefit increases. The salary schedule, effective January 1, 1991, provided for a 3.5% annual across-the-board rate of increase during the term of the contract.

In addition, the contract contains, *inter alia*, the following three provisions:

Article 4–2.   This Contract may be re-opened by mutual consent at any time.

Article 4–3.   After March 1, 1994, upon request by either party, the Board and the Association will negotiate as provided in Article 6.   Such negotiations shall terminate no later than June 1, 1994, unless extended by mutual consent.

\*       \*       \*       \*       \*       \*

Article   6–10.   Tentative   agreements reached as a result of such negotiations will be reduced to writing and will have the conditional written approval of both parties pending final adoption and approval of the school district budget.   After such adoption and approval, the final agreement will be signed by the board and the Association and will become an addendum to the Contract.   If changes in this tentative agreement are necessary as a result of the legal budget adoption process, the agreement will be subject to negotiation.

Also, § 22–32–110(5) was in effect at all times during the negotiations and term of the contract.   It provides:

No board of education shall enter into an agreement with any group, association, or organization representing employees of the district which commits revenues raised or received pursuant to Article 53 of this title for a period of time in excess of one year unless such agreement includes a provision which allows for the reopening of the portions of the agreement relating to salaries and benefits.

The District implemented all the salary increases contemplated by the contract in January and September 1991 and in September 1992.   However, on April 8, 1993, the Board wrote the DCTA to request that the parties negotiate any across-the-board increase in salaries for the 1993–94 school year. Believing that the District and Board were bound by the stated increases in the contract, DCTA refused this request to reopen negotiations.

On June 30, 1993, the Board adopted salary schedules for teachers for the 1993–94 school year which continued the existing salary schedule and denied any across-the-board 3.5% salary increase as provided for by the contract.

In mid-September 1993 the Board again requested DCTA to negotiate the issue of salaries for the 1993–94 school year and DCTA again declined to negotiate.

Thereafter, DCTA initiated this action challenging the Board's action in not implementing the negotiated across-the-board salary increase for the 1993–94 school year. Both parties moved for summary judgment. The trial court granted the District's motion, denied DCTA's cross-motion, and this appeal followed.

## I.   Standard of Review

■■■   Summary judgment may be granted only when the record establishes that there is no dispute as to any material fact and the prevailing party is entitled to judgment as a matter of law.   *Elm Distributors, Inc. v. Tri–Centennial Corp.,* 768 P.2d 215 (Colo.1989).   Because the granting of summary judgment is a drastic remedy, such an order should be entered only where the moving party demonstrates the existence of both evidentiary and legal predicates therefor. *Southard v. Miles,* 714 P.2d 891 (Colo.1986).

The parties contend, and we agree, that there are no material facts in dispute, and thus, this dispute may be determined by resolution of the legal issues presented for review.

## II.   Construction of Collective Bargaining Agreement

DCTA contends that the trial court erred in holding that the District did not breach the agreement by unilaterally deciding to renegotiate employees' salaries for the 1993–1994 school year.   Further, it asserts that the trial court improperly held that § 22–32–110(5) was not satisfied by the contract provision which allows both parties to reopen the contract at any time by mutual consent.   We disagree with these arguments.

■■■   The construction of an unambiguous contract is a question of law for the court.   *Fibreglas Fabricators, Inc. v. Kylberg,* 799 P.2d 371 (Colo.1990).   Whether a contractual provision is legal is an issue of

law for the court. *Jones v. Dressel,* 623 P.2d 370 (Colo.1981).

Further, the language of a contract must be construed in harmony with the plain and generally accepted meaning of words employed, and references must be made to all provisions of the agreement. The fact that there is a difference of opinion between the parties regarding the interpretation of an instrument does not of itself create ambiguity. *Radiology Professional Corp. v. Trinidad Area Health Ass'n, Inc.,* 195 Colo. 253, 577 P.2d 748 (1978).

In the absence of specific statutes to the contrary, a school board may lawfully enter into a collective bargaining agreement with a teachers association, provided that such agreement does not conflict with existing statutes concerning the governance of the state school system. *Littleton Education Ass'n v. Arapahoe County School District # 6,* 191 Colo. 411, 553 P.2d 793 (1976).

Moreover, when construing a statute, we must presume that the General Assembly intended each part of the statute to be effective and to reach a just and reasonable result. *Allstate Insurance Co. v. Parfrey,* 830 P.2d 905 (Colo.1992). A court must seek to promote the object of the law, and a construction that would defeat legislative intent will not be followed. *See Interest of R.C.,* 775 P.2d 27 (Colo.1989); § 2–4–203, C.R.S. (1990 Repl.Vol. 1B).

The interpretation of the agreement here turns upon the construction of § 22–32–110(5). DCTA contends that Article 4–2 of the agreement complies with this statutory provision. Because Article 4–2 provides for reopening of the agreement at any time by mutual consent, DCTA maintains that this provision "allows for the reopening of the portion of the agreement relating to salaries and benefits" as required by the statute. Accordingly, DCTA argues that it properly refused to renegotiate the salary increase provision of the agreement and that the District breached the agreement by unilaterally reopening it.

In response, the District argues that Article 6–10, not Article 4–2, is the applicable provision of the agreement which complies with § 22–32–110(5). It contends that since Article 6–10 allows for either party to reopen the agreement to negotiate such terms as salaries and benefits, that provision satisfies the requirements of § 22–32–110(5).

We agree with the trial court that the District's construction of the contract is correct.

Article 6 of the agreement, entitled "Negotiating Procedure," establishes a comprehensive scheme for modifying the parties' multiyear agreement. Among other things, it provides for either party to submit written requests for negotiation on such matters as teachers' salaries, wages, hours, and conditions of employment. The article further provides for a response to a request for negotiation and timelines pursuant to which such negotiations must take place.

In this context, Article 6–10 states in pertinent part: "If changes in this tentative agreement are necessary as a result of a legal budget adoption process, the agreement will be subject to negotiation."

In this regard, we note that school districts must adopt salary schedules and budgets on an annual basis. *See* § 22–63–401, C.R.S. (1995 Repl.Vol. 9). Additionally, a school district may not commit funds by contract which are in excess of an annual appropriation. *See* § 22–44–115(3), C.R.S. (1995 Repl.Vol. 9).

Thus, even though the parties had negotiated a multi-year agreement which contemplated annual salary increases, these provisions of state law and § 22–32–110(5) made it incumbent upon the parties to allow for annual reopening of salary and benefit provisions that could result from changes in the funds available to, or the needs of, the District.

Here, the record indicates that the District sought to reopen the agreement because of the adoption of a new constitutional provision, Colo. Const. art. X, § 20 (commonly known as the "TABOR Amendment" or Amendment 1) and the rejection of another proposed amendment increasing taxes for educational purposes (Amendment 6), both of which made it more difficult for the District

to comply with the last phase of the salary increase as contained in the agreement.

Thus, we affirm the trial court's ruling that Article 6, and in particular Article 6–10, requires that, pursuant to the provisions of § 22–32–110(5), renegotiation of salaries and benefits must be an available option when either party makes a request pursuant to Article 6.

In reaching this conclusion, we necessarily reject DCTA's argument, based upon Article 4–3, that Article 6 applies only to negotiations occurring after March 1, 1994. By its terms, Article 6–4 specifically contemplates that the negotiations in Article 6 apply to modifications of the existing agreement.

Moreover, we disagree with DCTA's contention that reference in Article 6–10 to "tentative agreements" compels the conclusion that that article provides only authority to renegotiate at the end of the multi-year agreement. Rather, because Article 6–10 recognizes that changes to a tentative agreement may be necessary "as a result of the legal budget adoption process," we conclude that that language further demonstrates that Article 6–10 was intended to apply to requests to renegotiate salaries and benefits during the course of the Agreement.

We also reject DCTA's argument that Article 4–2, which allows for reopening by mutual consent, satisfies the requirements of § 22–32–110(5). We affirm the trial court's holding that to interpret this statute to encompass negotiation upon mutual consent would relegate the legislative enactment to a useless act because all contracts may be reopened upon mutual consent. *See Colorado Investment Services, Inc. v. Hager*, 685 P.2d 1371 (Colo.App.1984). Accordingly, we conclude that the provisions of Article 4–2 of the agreement do not satisfy the terms of § 22–32–110(5).

Finally, because DCTA admittedly did not respond to the District's request for renegotiation, it waived its right to renegotiate and must abide by the District's determination of salaries for the 1993–94 school year.

## III. Board Policy

DCTA further next contends that, even if the contract does not comply with § 22–32–110(5), the District was obligated to comply with its own board policy regarding salary and benefits until the contract expired in August 1994. We disagree.

DCTA relies on Article 2–8 of the agreement, which states: "This Contract constitutes Board policy for the term of said contract and the Board and the Association will carry out the commitments contained therein and give them full force and effect." DCTA asserts that this policy created a quasi-contract between the parties which was breached by defendants' attempt to reopen negotiations.

A board policy can, in certain circumstances, constitute a contract between the parties. *Adams County School District No. 50 v. Dickey*, 791 P.2d 688 (Colo.1990). However, if some provisions of the contract are unenforceable because they do not comply with state law, a court cannot enforce those provisions in law or in equity. *Seeley v. Board of County Commissioners*, 791 P.2d 696 (Colo.1990).

Pursuant to § 22–63–401, C.R.S. (1995 Repl.Vol. 9), school districts must adopt salary schedules and budgets on an annual basis. Therefore, the Board could not pursue, and we cannot enforce, a policy of the Board that does not provide the opportunity for an annual reopening of salary and benefit provisions.

Additionally, to succeed on a quasi-contract claim, DCTA would have to demonstrate its reliance on the agreement. However, the record reveals that, when the agreement was drafted, all parties were aware of the 1989 enactment of § 22–32–110(5) requiring reopening provisions. That DCTA would rely on a contract which is inconsistent with that provision is, therefore, not tenable.

## IV. Constitutionality of §·22–32–110(5)

Alternatively, DCTA contends that § 22–32–110(5) is unconstitutional because it creates special legislation in violation of Colo.

Const. art. V, § 25, and denies equal protection of the laws in violation of the United States and Colorado Constitutions. We perceive no constitutional infirmity.

■ Statutes are presumed to be constitutional, and the burden is on the party attacking a statute to establish its unconstitutionality beyond a reasonable doubt. *People v. Wiedemer*, 852 P.2d 424 (Colo.1993).

## A.

Colo. Const. art. V, § 25, provides in pertinent part: "The general assembly shall not pass local or special laws in any of the following enumerated cases: ... providing for the management of common schools. In all other cases, where a general law can be made applicable no special law shall be enacted."

■ To determine whether § 22–32–110(5) constitutes special legislation, we must determine: (1) whether the legislation creates true classes, and (2) if so, whether the classifications are reasonable and rationally related to a legitimate public purpose. *In re Interrogatory by Governor Romer*, 814 P.2d 875 (Colo.1991).

■ The threshold question is whether the classification adopted by the General Assembly is a real or potential class, or whether it is logically and factually limited to a class of one and thus illusory. *See In re Senate Bill No. 95*, 146 Colo. 233, 361 P.2d 350 (1961) (striking down the "Glendale Bill," that by its terms did and could apply only to the city of Glendale).

Here, the challenged legislation creates a class which includes members of an organization that represents the employees of a school district who enter into a contract in excess of one year. Clearly, this class is not so logically and factually restricted that it amounts to an illusory class of one. *Cf. In re Senate Bill No. 95, supra.*

■ Next, we must determine whether the classifications adopted by the General Assembly are reasonable. Because no suspect classifications are involved, we must uphold § 22–32–110(5) if there is a rational basis for distinguishing the class involved and if members of the class are treated equally. *In re Interrogatory Propounded by Governor, supra.*

Here, a rational basis exists for requiring an organization of school employees to have a reopening provision relating to salaries and benefits in their collective bargaining agreement. Such a requirement is rationally related to the need for government to control its budgetary process and protect its fiscal integrity.

■ Thus, we conclude that § 22–32–110(5) does not constitute special legislation in violation of Colo. Const. art. V, § 25.

## B.

DCTA also argues that § 22–32–110(5) is unconstitutional as a denial of equal protection because it requires a reopening provision relating to salaries and benefits in multi-year contracts with employee associations, but does not require a similar provision as to school employees not represented by an association.

■ Equal protection of the laws assures that people who are similarly situated receive like treatment. *Gallegos v. Phipps*, 779 P.2d 856 (Colo.1989). When a classification attacked on equal protection grounds does not involve a fundamental right, suspect class, or a classification based on gender, the court must use a rational basis test to determine whether the statute violates the person's right to equal protection of the law. *Charlton v. Kimata*, 815 P.2d 946 (Colo. 1991).

■ Here, the challenged statutory provision relates to economic welfare and, therefore, should be declared unconstitutional only if there is no rational relationship between the statute and a legitimate end of government. *Colorado Society of Community & Institutional Psychologists, Inc. v. Lamm*, 741 P.2d 707 (Colo.1987).

Section 22–32–110(5) is closely tied to the process of school finance. For example, the General Assembly determines how much money a school district receives for its fiscal year. *See* § 22–53–122, C.R.S. (1995 Repl. Vol. 9). The district must also adopt a bud-

get on an annual basis and may not overspend the budget. *See* § 22–44–101, C.R.S. (1995 Repl.Vol. 9). In addition, the school board is required to adopt a salary schedule for teachers on an annual basis. *See* 22–63–401 (1995 Repl.Vol. 9).

Section 22–32–110(5) requires a reopening provision concerning salaries and benefits in multi-year contracts with employee associations so the district and the employees may review them in light of current financial conditions. Inasmuch as the salaries and benefits of employees of such employee associations will represent significant portions of a district's expenditures, we conclude that there is a rational relationship between the statute and the need for school districts to be fiscally sound. Therefore, § 22–32–110(5) does not violate DCTA's rights under the Colorado and United States Constitutions.

Judgment affirmed.

NEY and MARQUEZ, JJ., concur.