Art SHAW, Plaintiff–Appellee,

v.

SARGENT SCHOOL DISTRICT No. RE–33–J, acting through its BOARD OF EDUCATION, John H. McCormick, Shirley A. McCullough, Michael M. Mitchell, Bob Mattive, and Lee A. Wheeler, Defendants–Appellants.

No. 00CA0248.

Colorado Court of Appeals, Div. I.

Feb. 15, 2001.

Law Office of Edwin J. Lobato, Edwin J. Lobato, Alamosa, CO, for Plaintiff–Appellee.

Fowler, Schimberg & Flanagan, P.C., Daniel M. Fowler, Catherine A. Tallerico, Denver, CO, for Defendants–Appellants.

Opinion by Judge DAILEY.

In this action to recover early retirement benefits, defendant, Sargent School District No. RE–33–J (District), appeals the summary judgment entered in favor of plaintiff, Art Shaw. We affirm in part, reverse in part, and remand the cause for further proceedings.

## I. Background

In February 1996, the District adopted a policy providing for an Early Retirement Program, in which persons employed on a full-time basis for ten or more consecutive years were eligible to participate.

The District's policy provided that certain "procedures and regulations will be followed by everyone concerned, when there is a participant considered for the program." Pursuant to the policy, a "participant" must submit his or her "application" for early retirement benefits by April 1, the "[t]erms of payment will be determined by the superintendent and applicant," and "[f]inal approval will be made by the School Board at the April Board Meeting." The policy then provided an explicit formula for calculating the amount of benefits, before concluding with the statement that, "In order to repeal this policy [the District] will phase out the policy or give at least 2 years notice of repeal."

In March 1998, plaintiff, a custodian employed by the District for approximately 30 years, submitted both his resignation, effective June 30, 1998, and an application for early retirement benefits.

The District approved plaintiff's resignation at its March school board meeting, but, after meeting in executive session, rejected his application for early retirement benefits at its April meeting. No reason was given, nor was there any discussion about the District's action during the public portion of its April meeting.

In June 1998, plaintiff asserted to the District that he had been wrongfully denied early retirement benefits. Four days before plaintiff's resignation was to take effect, the District advised him that it would permit him to rescind his resignation and allow him to continue working.

Plaintiff did not rescind his resignation; instead, he sued the District on grounds of breach of implied contract, promissory estoppel, and bad faith. Upon the parties' cross-motions, the trial court granted summary judgment for plaintiff on the first two grounds and for the District on the last one.

The trial court ruled for plaintiff in large part because it determined that, analogous to *Continental Air Lines, Inc. v. Keenan,* 731 P.2d 708 (Colo.1987), the District's policy created an implied contract or enforceable promise, under which the District had no discretion to deny plaintiff's application for benefits.

## II. Interpreting the District's Policy

On appeal, the District contends that the trial court erred in granting summary judgment for plaintiff. We agree.

### A. Legal Standards

We review *de novo* an order granting summary judgment. *Vail/Arrowhead, Inc. v. District Court,* 954 P.2d 608 (Colo.1998). We recognize that summary judgment is a drastic remedy and that it is only appropriate where there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. *Compass Insurance Co. v. City of Littleton,* 984 P.2d 606 (Colo.1999).

An employer's statements and policies may form the basis of legal obligations to its employees. An employer may be liable under an implied contract theory where its policy conveys an offer that its employees accept and for which consideration is given. Alternatively, an employer may be liable under a promissory estoppel theory where: 1) the employer should reasonably have expected its employee to consider its policy to be a commitment or promise; 2) the employee reasonably relied on that promise to his or her detriment; and 3) injustice can be avoided only by enforcing the promise. *See Continental Air Lines, Inc. v. Keenan, supra;* Restatement (Second) of Contracts § 90 (1981).

Here, the trial court granted summary judgment for plaintiff on both implied contract and promissory estoppel grounds. Although the District on appeal disputes certain elements of the two claims, its arguments hinge upon one point: it cannot be said, as a matter of law, that the District "should reasonably have expected [plaintiff] to consider the [policy] as a commitment." *See Continental Air Lines, Inc. v. Keenan, supra,* 731 P.2d at 712.

The resolution of this issue turns upon an interpretation of the District's policy.

■ The interpretation of a written document is a question of law. *In re Trusts Created by Ferguson,* 929 P.2d 33 (Colo.App. 1996). If the language of the document is plain, its meaning clear, and no absurdity is involved, it must be enforced by the court as written. *Hudgeons v. Tenneco Oil Co.,* 796 P.2d 21 (Colo.App.1990). Ambiguity exists only where there is uncertainty as to the meaning of the language. *Hudgeons v. Tenneco Oil Co., supra.*

■ We will not torture words and phrases to create an ambiguity. *See Hudgeons v. Tenneco Oil Co., supra.* Rather, we will consider the language used in light of the whole document and the District's entire policy scheme to ensure a harmonious and sensible result. *Cf. United States Fidelity & Guaranty Co. v. Budget Rent–A–Car Systems, Inc.,* 842 P.2d 208 (Colo.1992)(in interpreting a contract, a court must examine the entire instrument rather than view clauses or phrases in isolation).

With these principles in mind, we now turn to a consideration of the language in the policy.

### B. Policy Language

The policy is phrased almost exclusively in terms that stress a mandatory, rather than discretionary, nature of decision-making. The policy describes eligibility criteria, directs that "everyone" (including, presumably, the District) *"will* follow" certain procedures (including determining terms of payment and approving eligible applications at a certain meeting), and provides an explicit formula for calculating benefits.

■ However, the policy also provides that the District has the right not only to repeal it with two years prior notice but also to "phase [it] out."

No one disputes that the District had the authority to phase out the policy, for whatever reason it wanted; however, the parties disagree regarding the manner in which the policy could appropriately be phased out.

The District argues that it had complete discretion to phase out the policy in any manner it chose, without any prior notice to employees. Plaintiff argues that any decision to phase out the policy was subject to both: 1) the District's own Policy Development plan requirement that, before changing a policy, the District hear "the recommendations of the superintendent and the viewpoints of persons and groups affected by the policy"; and 2) the District's statutory obligation under § 22–32–108(5), C.R.S.2000, to make policy decisions during meetings open to the public rather than in executive session.

We agree with plaintiff. The District's Policy Development plan indicates that one of the chief responsibilities of the school board is to develop policies. That process includes "revisions, deletions, and additions" to existing policies. The District's Policy and Regulations manual defines "policies" as "principles adopted by the Board to chart a course of action."

Phasing out the early retirement benefit constitutes a significant change in a previous course of action taken by the District. A phaseout would affect not only plaintiff and the other applicant for whom benefits were denied at the April meeting; it would also affect all other District employees who were then eligible or hoped to become eligible for early retirement benefits in the future. Because a phaseout would effect a significant change in the policy, it is a "revision" subject to the District's rules for policy development.

Consequently, the District could not adopt a policy of phasing out the program simply by recording a vote taken in connection with two individual applications for benefits.

The District never conferred, as required by its own rules, with any groups or individuals affected by a purported phaseout before denying plaintiff's application. And, there was no public discussion, as required by statute, at the April meeting regarding a purported phaseout of the policy. Indeed, there was no official announcement regarding the policy until a year later, when the policy was deleted.

We reiterate that the District had the authority to phase out the early retirement

program for whatever reason it chose. However, under the circumstances, as a matter of undisputed fact and law, the District had not "phase[d] out" the program by the time it was otherwise obligated by the terms of the policy to approve plaintiff's application for benefits.

This conclusion, however, does not wholly resolve the case.

### C. Impact of Statutes

■ Although the District had not phased out its early retirement program, the extent of its obligations under that program must be assessed in light of applicable statutes. *See Keeling v. City of Grand Junction*, 689 P.2d 679, 680 (Colo.App.1984)("The existing law at the time and place of the making of the contract ... becomes a part of the contract."); 11 *Williston on Contracts* § 30:19 at 206, 211 (R. Lord 4th ed.1999)("contractual language must be interpreted in light of existing law, the provisions of which are regarded as implied terms of the contract, regardless of whether the agreement refers to the governing law").

Section 22–44–103, C.R.S.2000, requires school districts to adopt annual budgets and appropriations resolutions. Section 22–44–115, C.R.S.2000, provides, in pertinent part, that:

> (1) A board of education of a school district shall not expend any moneys in excess of the amount appropriated by resolution for a particular fund.
>
> . . . .
>
> (3) Except as provided otherwise by this section, any obligation of a contract, verbal or written, which requires expenditures contrary to the provisions of subsection (1) of this section shall be void, and no school district moneys shall be paid thereon.

Section 22–44–115 does not prohibit the District from adopting a contract or policy that has fiscal implications over several years. However, that statute ensures that school districts do not engage in deficit spending by entering into contracts or policies that cannot be modified in subsequent years. *See Denver Classroom Teachers Ass'n v. School District No. 1*, 911 P.2d 690, 695 (Colo.App.1995)(valid, multi-year contracts must allow for annual reopening of teacher salary or benefit provisions, because "a school district may not commit funds by contract which are in excess of an annual appropriation").

In light of §§ 22–44–103 and 22–44–115, we construe the District's policy to create a conditional promise or commitment to provide early retirement benefits; the promise or commitment to provide such benefits is subject to the availability of adequate appropriated funds.

■ Here, the District's school board president provided an affidavit stating two reasons—one of which was budgetary considerations—for denying plaintiff's application for benefits. In response, plaintiff submitted an audit of the District's financial position, which he claims shows that the District had sufficient funds to fulfill its promise. Because a disputed question of material fact remains, *i.e.*, whether the District had sufficient means to pay plaintiff's early retirement benefits, the summary judgment cannot stand.

In our view, plaintiff is entitled to program benefits unless the District establishes that payment of the benefits would require it to expend moneys in excess of its appropriations. In resolving this issue, the trial court must balance the District's responsibility to refrain from deficit spending against its responsibility to honor its commitments to employees. In order to ensure that the District's commitment to pay benefits does not become illusory in nature, the court should not, absent exceptional circumstances, permit moneys otherwise available for this purpose to be diverted to other uses.

### III. Disposition

We affirm those parts of the trial court's ruling that determined that the District's policy created a promise or commitment to provide benefits and that the policy had not, as a matter of law, been phased out by the time the District was otherwise obligated to approve plaintiff's request for benefits. However, we reverse the ruling to the extent

that it determined the District's promise or commitment to be absolute, rather than conditional, in nature. Finally, we remand the cause for further proceedings to determine whether budgetary considerations justified the District's denial of plaintiff's application for benefits.

Accordingly, the judgment is affirmed in part and reversed in part, and the cause is remanded for further proceedings consistent with the views expressed in this opinion.

METZGER and VOGT, JJ., concur.