**William McDONALD, Plaintiff,**

v.

**COMMONWEALTH OF MASSACHU-SETTS and General Accident Insurance Co., Defendants.**

**Civ. A. No. 92–11772–GAO.**

United States District Court,
D. Massachusetts.

Sept. 25, 1995.

William McDonald, Whitinsville, MA, pro se.

Edmund J. Sullivan, Edward J. DeAngelo, Jane L. Willoughby, Attorney General's Office, Boston, MA, Beth D. Levi, Government Bureau, Boston, MA, for Commonwealth of Massachusetts.

Linda D. Oliveira, Parker, Coulter, Daley & White, Fall River, MA, Cheri L. Crow, Reading, MA, for General Acc. Ins. Co. of America.

### MEMORANDUM AND ORDER

O'TOOLE, District Judge.

The Court has for consideration the Report and Recommendation of Magistrate Judge Collings, dated April 7, 1995 (Docket Entry # 83), analyzing the issues presented by the defendants' motions to dismiss the plaintiff's various claims and recommending that each of the claims asserting a right under federal law be dismissed for failure to state a claim upon which relief could be granted under Fed.R.Civ.P. 12(b)(6), and further recommending that the Court decline to exercise supplemental jurisdiction over the various state claims and that they be dismissed as well. After the Magistrate Judge's Report and Recommendation was filed, none of the parties filed any objection to it. *See* Rule 3(b), Rules for United States Magistrates in the United States District Court for the District of Massachusetts.

After review of the parties' pleadings, motions and supporting papers, and the Report and Recommendation of Magistrate Judge Collings, the Court approves and adopts the reasoning and conclusions of the Magistrate Judge and rules as follows:

1. The plaintiff has not alleged that he was excluded from participation in a "program or activity receiving Federal financial assistance" within the meaning of § 504 of the Rehabilitation Act, 29 U.S.C. § 794(a), and his complaint consequently fails to state a claim under that statute. *Bento v. I.T.O. Corp. of Rhode Island,* 599 F.Supp. 731, 741 (D.R.I.1984); *see Consolidated Rail Corp. v. Darrone,* 465 U.S. 624, 635, 104 S.Ct. 1248, 1255, 79 L.Ed.2d 568 (1984).

2. The plaintiff's allegation that he has not been paid workers' compensation benefits he is entitled to by reason of his physical injury does not state a claim for handicap discrimination under the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq.* The gist of his claim is not that he has been treated discriminatorily *because of* his disability, but that he has been denied benefits *despite* his qualifying injury. This claim is not within the scope of the prohibitions of the ADA.

3. Because the plaintiff has no rights in the premises under the Rehabilitation Act or the ADA, he has not been deprived of those rights unlawfully and has therefore failed to state a claim under the Civil Rights Act, 42 U.S.C. § 1983.

4. In these circumstances, the Court ought not to retain supplemental jurisdiction over the state claims.

Therefore, it is *ORDERED* that the defendants' motions to dismiss be granted and the plaintiff's amended complaint be *DISMISSED.*

### REPORT AND RECOMMENDATION ON STATE DEFENDANT'S MOTION TO DISMISS STATE LAW CLAIMS IN AMENDED COMPLAINT (# 27) AND DEFENDANT GENERAL ACCIDENT INSURANCE COMPANY'S MOTION TO DISMISS (# 48)

COLLINGS, United States Magistrate Judge.

### I. INTRODUCTION

On or about May 21, 1993, plaintiff William McDonald (hereinafter "McDonald") filed a pro se amended complaint (# 20) against the Commonwealth of Massachusetts (hereinaf-

ter "the Commonwealth") and the General Accident Insurance Company (hereinafter "GAIC") alleging claims arising under the Rehabilitation Act of 1973, 29 U.S.C. § 701, et seq., the Americans With Disabilities Act (hereinafter "ADA"), 42 U.S.C. § 12101, et seq., and Massachusetts General Laws chapter 152. The thrust of the amended complaint (# 20)[1] is that the defendants have failed and refused to pay McDonald worker's compensation benefits to which he is purportedly entitled as a result of injuries sustained in an industrial accident. More specifically, GAIC is alleged to have denied the insurance benefits while the Commonwealth is alleged to have acquiesced in that refusal.

In addition to filing an answer to the amended complaint (# 26), the Commonwealth submitted a motion to dismiss the state law claims alleged therein. (# 27) McDonald interposed an objection to that dispositive motion. (# 29) On September 29, 1993, the Court issued an order (# 41) requiring each of the defendants to file a memorandum of law in support of the affirmative defense raised in their respective answers that the amended complaint failed to state a claim upon which relief could be granted. The Commonwealth filed a response on October 14, 1993 (# 44) and GAIC followed suit five days later. (# 45)

A further order (# 46) issued on October 28, 1993, wherein the Court noted that al-though the dispositive motion earlier filed related only to the state law claims in the amended complaint, the defense raised by the Commonwealth applied to both the state and federal claims.[2] The Commonwealth was ordered to file a further memorandum in support of the defense that the amended complaint failed to state any federal claims upon which relief could be granted. The Commonwealth complied with the further order on or about November 9, 1993. (# 50)

Subsequent to submitting a response to the September 29th Order, GAIC filed a motion to dismiss the amended complaint for failure to state a claim (# 48), together with a memorandum in support. (# 49) McDonald has not opposed GAIC's dispositive motion, nor has he addressed in any fashion the defendants' arguments in support of their affirmative defenses.

Thus to summarize, in essence the Commonwealth has moved to dismiss the federal law claims alleged in the amended complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim[3] and the state law claims under Rule 12(b)(1), Fed.R.Civ.P., for lack of subject matter jurisdiction. Defendant GAIC seeks dismissal of all the claims asserted against it in accordance with Fed.R.Civ.P. 12(b)(6). This case has been referred to the undersigned pursuant to 28

1. The plethora of pleadings in this case can be confusing. The initial "Civil Action Complaint" was filed on July 20, 1992. (# 1) The Commonwealth responded with a Motion for a More Definite Statement. (# 5) I allowed the motion in an Order dated September 23, 1992. (*See* # 10) McDonald replied in a pleading dated October 7, 1992 in which he indicated that he needed legal counsel in order to comply with the September 23rd Order and was actively seeking counsel. (*See* # 11) In a Further Order dated December 29, 1992, I granted McDonald an extension of time to comply with the September 23rd Order. (*See* # 15) He responded by stating that he could not comply without legal counsel and was unable to obtain a lawyer on his own. Accordingly, the Clerk, at my direction, contacted a lawyer whom McDonald had said had represented him in the past and asked that lawyer if he would assist McDonald in complying with the September 23rd Order. On May 21, 1993, the attorney filed an Amended Complaint (# 20) on McDonald's behalf. McDonald filed a Further Amended Complaint (# 31) on or about July 29, 1993. The state defendant moved to strike the further amended complaint, and that motion

.(# 33) was allowed by the Court on September 29, 1993. On November 10, 1993, McDonald filed a motion to strike the amended complaint which had been drafted for him by the attorney on the ground that he never authorized its filing. (*See* # 51) The Court has not acted upon that motion because a review of the Amended Complaint (# 20) prepared by the attorney and the Further Amended Complaint (# 31) which McDonald sought to file reveals that there is no substantive, legally relevant difference between them. The end result is the same whether one views the Amended Complaint (# 20) or the Further Amended Complaint (# 31) as the operative pleading.

2. The memorandum filed by GAIC in response to the September 29th Order addressed all the claims, both federal and state, that were advanced in the amended complaint.

3. Although a formal motion to dismiss for failure to state a claim has not been filed, the Court-ordered memorandum of law (# 50) shall be treated as such a dispositive motion.

U.S.C. § 636(b)(1)(B) for the issuance of proposed findings of fact and recommendations for disposition with respect to the motions to dismiss.

## II. THE FACTS

As mandated in the present context, all the well-pleaded factual allegations of the amended complaint are accepted as true and, further, the facts will be construed in the light most favorable to the non-moving party. *See,* e.g., *Caribe BMW, Inc. v. Bayerische Motoren Werke Aktiengesellschaft,* 19 F.3d 745, 748 (1 Cir., 1994) citing *Garita Hotel Ltd. Partnership v. Ponce Fed. Bank, F.S.B.,* 958 F.2d 15, 17 (1 Cir., 1992).

Plaintiff McDonald is an individual resident in Whitinsville, Massachusetts. (Amended Complaint, # 20 ¶ 1) In or about October of 1985, while an employee of Garelick Farms, he suffered severe injuries in an industrial accident on the job. (# 20 ¶ 8) Due to his resultant disabilities, McDonald applied for worker's compensation benefits through his employer. (# 20 ¶ 9) At the time of the accident and thereafter, GAIC was the worker's compensation insurance carrier for Garelick Farms. (# 20 ¶ 10) GAIC, a duly organized and licensed insurance company, maintains a principal place of business in Peabody, Massachusetts. (# 20, ¶ 5)

Since October, 1985, McDonald's claim for worker's compensation has been pending before the Department of Industrial Accidents, the appropriate administrative agency of the Commonwealth. (# 20 ¶¶ 3, 11, 12) During this period, i.e., continuously from the date of the accident forward, it is alleged that GAIC has either failed and/or refused to provide McDonald with the benefits to which he is entitled. (# 20 ¶ 13) As detailed in the amended complaint, GAIC has been remiss in the following ways: failure to pay doctor, hospital and therapy bills during 1989 when the services were rendered[4] (# 20 ¶ 13a); failure to pay hospital and therapy bills during 1990 when the charges were incurred[5] (# 20 ¶ 13b); failure to pay unspecified doc-

tor and emergency room bills (# 20 ¶ 13c); failure and refusal to pay for equipment such as bars, ramps and wheelchairs, apparatus required to ensure the safety and accessibility of McDonald's house, thereby rendering the plaintiff unable independently to use the bathroom, exit his home for pleasure or in an emergency, and practice his religion (# 20 ¶¶ 13d, f, g and h); failure to provide unspecified services relating to certain injuries and illnesses McDonald has endured consequent to his industrial accident (# 20 ¶ 13e); employing threats and coercion by means of repeated demands for McDonald to undergo physical examinations while knowing full well that McDonald could not comply due to his disabilities (# 20 ¶ 13j); and, finally, denying permanent benefits to McDonald as a result of his "refusal" to be subjected to an unlawful and unauthorized physical examination, having actual knowledge that McDonald was physically unable to attend. (# 20 ¶ 13j)

With respect to the second defendant, it is contended that the Commonwealth was remiss in its consistent failure to compel GAIC to provide McDonald with the services he needs. (# 20 ¶ 14) By permitting GAIC to act in such a manner, McDonald alleges that the Commonwealth has aided the insurance company in discriminating against him. (# 20 ¶ 15) Lastly, although aware of McDonald's disabilities, the Commonwealth purportedly has failed to provide the plaintiff reasonable accommodations such as would allow him to comply with the requirements of the Massachusetts worker's compensation statute. (# 20 ¶ 16)

It should be noted that the following allegations are also set forth in the amended complaint. First, it is alleged that McDonald "is a qualified individual with a disability pursuant to the ADA." (# 20 ¶ 2) Second, the Commonwealth is alleged to be "a public entity as defined by the ADA." (# 20 ¶ 4) Next, GAIC is purported to be "an instrumentality of the Commonwealth of Massachusetts for purposes of providing Worker's Compensation insurance pursuant to M.G.L.

---

**4.** The therapy bills were paid when a conciliation conference was scheduled approximately a year later. (# 20 ¶ 13a)

**5.** These bills were paid approximately a year later when a conciliation conference was set. (# 20 ¶ 13b)

chapter 152, as defined by the ADA 42 U.S.C. § 12115 and is subject to the requirements of the ADA." (# 20 ¶ 6) Finally it is asserted that GAIC "in its capacity as a private entity is subject to the requirements of the ADA." (# 20 ¶ 7)

### III. THE CLAIMS

■ Given McDonald's status as a pro se plaintiff, it is axiomatic that his amended complaint is "held to 'less stringent standards'" and must be "liberally construed." *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976) (quoting *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972)); *see also Boag v. MacDougall,* 454 U.S. 364, 365, 102 S.Ct. 700, 701, 70 L.Ed.2d 551 (1982). Under such a broad view, the amended complaint could be read to allege ten claims, five against each defendant.

In Count I, McDonald contends that, premised upon its enumerated failures to provide required benefits, GAIC has denied him "equal access as guaranteed under the ADA." The same acts and omissions are alleged to be a violation of the Rehabilitation Act. Consequent to these transgressions of the ADA and the Rehabilitation Act, GAIC supposedly has deprived McDonald of his civil rights, presumably in violation of 42 U.S.C. § 1983.

With respect to state law claims, McDonald asserts that GAIC has violated the Massachusetts worker's compensation statute by refusing and failing to provide him with the benefits to which he is entitled thereunder. Lastly, the allegations of Count I may fairly be construed to set forth a claim under M.G.L. ch. 93, § 103 against GAIC for an equal rights violation based on handicap.

The claims in Count II against the Commonwealth are essentially identical. As regards federal claims, McDonald alleges violations of the ADA, the Rehabilitation Act and 42 U.S.C. § 1983 founded on the failure by the Commonwealth to force GAIC to provide obligatory benefits to him. Further, the Commonwealth has allegedly deprived McDonald of his right to compensation under the state worker's compensation laws. Finally, the second state law claim is again a purported equal rights violation under M.G.L. ch. 93, § 103.

### IV. ANALYSIS

#### A. The Federal Claims

■ The First Circuit has had occasion to write that:

The jurisprudence of Civil Rule 12(b)(6) is well defined. An appellate court reviews the granting of a motion to dismiss *de novo,* applying the same criteria that obtained in the court below. *McCoy v. Massachusetts Institute of Technology,* 950 F.2d 13, 14 (1st Cir.1991). Thus, we take the factual averments contained in the complaint as true, indulging every reasonable inference helpful to the plaintiff's cause. *See Dartmouth Review v. Dartmouth College,* 889 F.2d 13, 16 (1st Cir. 1989); *Gooley v. Mobil Oil Corp.,* 851 F.2d 513, 514 (1st Cir.1988). Great specificity is ordinarily not required to survive a Rule 12(b)(6) motion. Apart from certain specialized areas not implicated here, it is enough for a plaintiff to sketch an actionable claim by means of "a generalized statement of facts from which the defendant will be able to frame a responsive pleading." 5A C. Wright & A. Miller, *Federal Practice and Procedure* § 1357 (1990). In the last analysis, then, the court of appeals "may affirm a dismissal for failure to state a claim only if it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory." *Correa–Martinez v. Arrillaga–Belendez,* 903 F.2d 49, 52 (1st Cir.1990).

*Garita Hotel, Ltd. v. Ponce Federal Bank,* 958 F.2d 15, 17 (1 Cir., 1992) (footnote omitted).

In footnote 1, the *Garita* court recognized that "more detailed statements of claim" were required in, among other types, civil rights cases. *Id.* at n. 1. Moreover, a complaint will be deemed insufficient if the plaintiff relies upon "'bald assertions, unsupportable conclusions, and "opprobrious epithets."'" *The Dartmouth Review v. Dartmouth College,* 889 F.2d 13, 16 (1 Cir., 1989) quoting *Chongris v. Board of Appeals,* 811 F.2d 36, 37 (1 Cir.), *cert. denied,* 483 U.S.

1021, 107 S.Ct. 3266, 97 L.Ed.2d 765 (1987) (further citation omitted). In short, under Rule 12(b)(6),

> ... minimal requirements are not tantamount to nonexistent requirements. The threshold may be low, but it is real—and it is the plaintiff's burden to take the step which brings his case safely into the next phase of litigation. The court need not conjure up implied allegations or contrive elaborately arcane scripts in order to carry the blushing bride through the portal.

*Gooley v. Mobil Oil Corporation,* 851 F.2d 513, 514 (1 Cir., 1988).

 Although review of the amended complaint in the present case is moderated in the sense that it is held to "less stringent standards", the First Circuit has nevertheless "required even pro se plaintiffs to plead specific facts backing up their claims of civil rights violations." *Glaros v. Perse,* 628 F.2d 679, 684 (1 Cir., 1980) (citations omitted). In addition, the "duty to be 'less stringent' with pro se complaints does not require [the court] to conjure up implied allegations." *McDonald v. Hall,* 610 F.2d 16, 19 (1 Cir., 1979) (citation omitted).

Having set forth the applicable standard, the individual claims shall be considered.

### 1. The Rehabilitation Act Claims

 In pertinent part, § 504 of the Rehabilitation Act provides:

> No otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794(a).

The purpose underlying § 504 is "to assure evenhanded treatment and the opportunity for handicapped individuals to participate in and benefit from programs receiving federal assistance." *Alexander v. Choate,* 469 U.S. 287, 304, 105 S.Ct. 712, 722, 83 L.Ed.2d 661 (1985) citing *Southeastern Community College v. Davis,* 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979).

The Supreme Court has noted that "[s]ection 504, by its terms, prohibits discrimination only by a 'program or activity receiving Federal financial assistance.'" *Consolidated Rail Corporation v. Darrone,* 465 U.S. 624, 635, 104 S.Ct. 1248, 1255, 79 L.Ed.2d 568 (1984). Courts have held that

> In order to state a claim for violation of § 504, [the plaintiff] must prove that (i) he is a "handicapped person" under the Act, (ii) he is "otherwise qualified" for the position, (iii) he is being excluded from the position solely by reason of his handicap, and (iv) the position exists as part of a program or activity receiving federal financial assistance.

*Bento v. I.T.O. Corporation of Rhode Island,* 599 F.Supp. 731, 741 (D. R.I., 1984); *see also,* e.g., *Simpson v. Reynolds Metals Company, Inc.,* 629 F.2d 1226, 1231–2 (7 Cir., 1980); *Martin v. Delaware Law School of Widener University,* 625 F.Supp. 1288, 1298 (D.Del., 1985); *John A., By and Through, Valerie A. v. Gill,* 565 F.Supp. 372, 384 (N.D.Ill., 1983).

There is no question but that receipt of federal financial assistance is an element of the cause of action under the Rehabilitation Act. Indeed,

> [a] primary purpose of [42 U.S.C.] § 12131 [ADA] was to extend the reach of § 504 of the Rehabilitation Act of 1973, 29 U.S.C.A. § 794,
>
> > "to all programs, activities, and services provided or made available by state and local governments or instrumentalities or agencies thereto, regardless of whether or not such entities received Federal financial assistance. *Currently, section 504 prohibits discrimination only by recipients of Federal financial assistance."*
>
> H.Rep. No. 485 (II), 101st Cong., 2d Sess. 84 (1990), *reprinted in* 1990 U.S.C.C.A.N. 267, 366.

*Ethridge v. State of Alabama,* 847 F.Supp. 903, 906 (M.D.Al., 1993) (emphasis added).

At no place in his amended complaint does McDonald make any allegation with respect to "federal financial assistance." On this

478

ground alone, the amended complaint is fatally deficient under Rule 12(b)(6) for failing to state a claim. *See, e.g., Simpson,* 629 F.2d at 1231–2. Any claims premised upon purported violations of the Rehabilitation Act should be dismissed.

### 2. The ADA Claims

■ Generally speaking, "Title II of the ADA, 42 U.S.C. 12131–12134, incorporates the 'non-discrimination principles' of section 504 of the Rehabilitation Act and extends them to state and local governments." *Helen L. v. DiDario,* 46 F.3d 325, 331 (3 Cir., 1995) (citation omitted). McDonald specifically references this portion of the ADA in his amended complaint; the statute provides, inter alia, that

. . . no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132.

By statutory definition, a public entity is "any state or local government" or "any department, agency, special purpose district, or other instrumentality of a state or states or local government." 42 U.S.C. § 12131(1)(A) and (B). Also as defined in the subchapter,

The term "qualified individual with a disability" means an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.

42 U.S.C. § 12131(2).

Parsing the statutory provision in § 12132 to its basics,

[t]o establish a violation of Title II, plaintiff must show:

(1) that he is a qualified individual with a disability;

(2) that he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and

(3) that such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability.

*Tyler v. City of Manhattan,* 849 F.Supp. 1429, 1439 (D.Kan., 1994) citing *Concerned Parents to Save Dreher Park Center v. City of West Palm Beach,* 846 F.Supp. 986, 989–90 (S.D.Fla., 1994).

In his amended complaint, McDonald alleges that he is a "qualified individual with a disability", that the Commonwealth is a "public entity", and that GAIC is an "instrumentality" of the Commonwealth and, hence, also a "public entity" within the meaning of the ADA. It is certainly open to question whether these allegations constitute facts or are really mere conclusions. The First Circuit has been

. . . cognizant that the line between "facts" and "conclusions" is often blurred. But, there are some general parameters. Most often, facts are susceptible to objective verification. Conclusions, on the other hand, are empirically unverifiable in the usual case. They represent the pleader's reactions to, sometimes called "inferences from," the underlying facts. It is only when such conclusions are logically compelled, or at least supported, by the stated facts, that is, when the suggested inference rises to what experience indicates is an acceptable level of probability, that "conclusions" become "facts" for pleading purposes.

*The Dartmouth Review,* 889 F.2d at 17.

In the present case, McDonald has set forth absolutely no underlying facts that would support the allegations either that he is a "qualified individual with a disability" or that GAIC is an "instrumentality" of the Commonwealth as those terms are defined in the ADA. This insufficiency in and of itself proves fatal to his claim.

■ The essence of McDonald's allegations is that he has not received the benefits to which he believes he is entitled under the state worker's compensation laws. The

plaintiff does not contend that he has been denied any benefits "by reason of" any disability. Rather, McDonald asserts, fundamentally, that on account of his disability, he is due benefits that have not been provided. Such a claim, quite simply, is not cognizable under the ADA.

### 3. The Civil Rights Claims

■ In relevant part, 42 U.S.C. § 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof, to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the person injured in an action at law, suit in equity, or other proper proceeding for redress.

*Id.*

To the extent that McDonald's amended complaint can be read to allege such a civil rights violation, the claim is premised upon a deprivation of rights secured by either the Rehabilitation Act or the ADA. Having failed to state a claim under either of these federal laws, any concomitant claim under § 1983 likewise is unsuccessful. *See,* e.g., *Noland v. Wheatley,* 835 F.Supp. 476, 483–5 (N.D.Ind., 1993).

### B. The State Claims

■ With the dismissal of all the federal law claims, the Court should decline to exercise pendent jurisdiction over the state law claims and they too, therefore, should be dismissed. *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). In these circumstances, although the Commonwealth's motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(2) appears to have merit, there is no need to discuss it; the Commonwealth would not be able to interpose the Eleventh Amendment as a defense in a state court proceeding.

### V. RECOMMENDATIONS

For all of the reasons stated hereinabove, I RECOMMEND that the State Defendant's Motion to Dismiss (# 27) be DENIED as moot. Construing the State Defendant's Response to Order (# 50) to constitute a motion to dismiss, I RECOMMEND that the motion be ALLOWED. I FURTHER RECOMMEND that GAIC's Motion to Dismiss (# 48) be ALLOWED.

### VI. REVIEW BY THE DISTRICT JUDGE

The parties are hereby advised that under the provisions of Rule 3(b) of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts, any party who objects to this report and these recommendations must file a written objection thereto with the Clerk of this Court within 10 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the recommendations, or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has indicated that failure to comply with this rule shall preclude further appellate review. *See Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603 (1 Cir., 1980); *United States v. Vega,* 678 F.2d 376, 378–379 (1 Cir., 1982); *Scott v. Schweiker,* 702 F.2d 13, 14 (1 Cir., 1983). *See also Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).

April 7, 1995