Donna T. BRADSHAW and Ken Bradshaw, personally and as parents and next friends of Mia Bradshaw; and Mia Bradshaw, a minor, Plaintiffs–Appellants,

v.

CHERRY CREEK SCHOOL DISTRICT NO. 5, and the Board of Education of Cherry Creek School District No. 5, in its official capacity, a Colorado municipal corporation, Defendants–Appellees.

No. 02CA0940.

Colorado Court of Appeals,
Div. V.

Sept. 11, 2003.

As Modified on Denial of Rehearing
Jan. 15, 2004.

Certiorari Denied Oct. 18, 2004.

Kutz & Bethke, William P. Bethke, Kristin A. Kutz, Lakewood, Colorado, for Plaintiffs–Appellants.

Banta, Hoyt & Everall, L.L.C., Richard J. Banta, Denver, Colorado, for Defendants–Appellees.

Opinion by Judge CRISWELL.*

In this public school disability discrimination case, plaintiffs, Donna T. and Ken Bradshaw, personally and as parents and next friends of Mia Bradshaw, their minor daughter, appeal the trial court's judgment in favor of defendants, Cherry Creek School District No. 5 and its Board of Education. We affirm the judgment.

Mia was born with cranio-facial deformities and, as a result, experiences hearing and visual impairments and a distinctive appearance. As determined by the trial court, Mia is a child with a disability, who is entitled to special education under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400, et seq. (2002)(IDEA).

At the beginning of the 1996–97 school year, the Bradshaws lived in the district and enrolled Mia in second grade at Willow Creek Elementary School. During that school year, however, the Bradshaws moved out of the district, but Mia was allowed to complete the second grade at Willow Creek. In addition, she also attended the third and fourth grades at Willow Creek by reapplying each year for interdistrict enrollment.

However, the district denied her application to reenroll in the fifth grade for the 1999–2000 school year. As grounds for the denial, the school principal stated that Mia's

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2002.

special education program exceeded the district's capacity limit and that the school was not accepting special education students who live outside its attendance area.

The Bradshaws requested review of the principal's denial in two ways. They first appealed to the district's admission appeals committee as permitted by district policy. Based on the Bradshaws' written submissions, the committee concluded that the denial was made for reasons permitted under district policy, and therefore, it upheld the decision.

Second, the Bradshaws simultaneously sought relief through the hearing procedures under the IDEA. *See* 20 U.S.C. § 1415(f); 34 C.F.R. § 104.36. After briefing by the parties, a hearing officer dismissed the proceeding, and an administrative law judge (ALJ) affirmed that ruling.

While the ALJ's review was pending, the Bradshaws moved back into the district and reenrolled Mia at Willow Creek as a resident student within its attendance area. They incurred moving costs and other expenses as a result.

The Bradshaws initiated two civil actions. In the first, they alleged numerous grounds for relief, based on the district's admission appeals committee procedures. They sought a declaratory judgment that the district had violated the Colorado school choice statutes, §§ 22–32–116(2)(b) and 22–36–101(1)(b), C.R.S.2002, and that it had deprived them of procedural due process of law.

In their second complaint, the Bradshaws alleged that: (1) the foregoing state statutes are incorporated into the IDEA, and the district's violation of those statutes denied Mia a free appropriate public education (FAPE) in violation of that statute; (2) the district is liable to them under 42 U.S.C. § 1983 for the committee's violation of the Due Process Clause of the United States Constitution; and (3) in denying Mia admission based on her disability and in refusing to allow her to continue in her previous program until she moved back into the district, the district engaged in intentional and invidious discrimination in violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and the Americans with Disabilities Act, 42 U.S.C. § 12132.

All parties moved for summary judgment. The trial court denied the Bradshaws' motion and granted the district's motion. The Bradshaws' appeals from the dismissal of both cases have been consolidated.

## I.

We review de novo an order granting summary judgment. Such a judgment is a drastic remedy that is appropriate only if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. C.R.C.P. 56(c); *Shaw v. Sargent Sch. Dist. No. RE–33–J ex rel. Bd. of Educ.*, 21 P.3d 446 (Colo.App.2001).

## II.

The Bradshaws contend that the trial court erred in granting summary judgment dismissing their claim for declaratory relief that the district violated the school choice statutes, §§ 22–32–116(2)(b) and 22–36–101(1)(b), C.R.S.2002. We disagree.

■ Initially, we note that this claim is not moot. In their complaint, the Bradshaws alleged that they had incurred the cost of moving back into the district when Mia was wrongfully denied reenrollment at Willow Creek. As a result, they sought ancillary equitable relief akin to damages, as well as declaratory relief. The trial court is authorized to grant both declaratory and further relief as may be necessary and appropriate. *See* C.R.C.P. 57(h); *cf. Carney v. Civil Serv. Comm'n*, 30 P.3d 861 (Colo.App.2001)(case is moot only if the relief sought, if granted, would have no practical legal effect).

### A.

■ The Bradshaws first contend that Mia was entitled to reenroll for the 1999–2000 school year at Willow Creek as a former district resident under § 22–32–116(2)(b). We disagree.

That statute provides:

If a pupil is enrolled in an elementary school and becomes a nonresident *subsequent to the time of enrollment or* becomes a nonresident *during the time period between school years,* the school district shall

allow the pupil to *remain enrolled* in or to *reenroll* in said elementary school [subject to certain requirements that are not relevant to the issue here presented].

(Emphasis added.)

■ When construing a statute, reviewing courts should first consider the statutory language and give the words their plain and ordinary meaning. If the meaning is unambiguous, courts should not resort to interpretive rules of statutory construction, such as the legislative intent. *Town of Telluride v. Lot Thirty–Four Venture, L.L.C.,* 3 P.3d 30 (Colo.2000).

Here, we conclude that the statute is unambiguous. If the child becomes a nonresident of the district during the school year, the child may "remain enrolled" for that school year. If the child becomes a nonresident after the end of that school year, but before the start of the next year, the child is entitled to "reenroll" for the following year.

However, a child who became a nonresident during the school year and "remain[ed] enrolled" *during* the school year is given no right to "reenroll" for the following school year. Reenrollment is limited to those students who become nonresidents during the time period between school years and extends only to the following school year.

The Bradshaws, relying upon a single statement made by the sponsor of the bill which became § 22–32–116(2)(b), assert that this statute grants to *every* child who becomes a nonresident, irrespective of when that event occurs, the right to "reenroll" during each of the following school years, until that child completes the whole of the elementary education offered by that school. We disagree.

The bill's sponsor said, during his introductory remarks to the committee, that the bill was intended to allow a nonresident child to fulfill his or her "tenure" at the school—a term that he did not define or describe. Hearing on H.B. 94–1174 before the House Education Committee, 59th General Assembly, Second Session (Feb. 7, 1994).

As we have noted, however, we do not consider the statute to be ambiguous in any manner. Hence, we may not consider legislative history when interpreting it. *See Town of Telluride v. Lot Thirty–Four Venture, L.L.C., supra.* Nevertheless, even if we were to consider the legislator's remarks, we would not change our conclusion as to the meaning of the statutory language.

Here, then, because Mia became a nonresident during the school year, § 22–32–116(2)(b) entitled her to complete that year in Willow Creek. Thereafter, however, this statute did not apply to her later requests to reenroll at that school for subsequent years.

### B.

■ The Bradshaws also contend that a genuine issue of material fact existed as to their claim under the general school choice provision, § 22–36–101, C.R.S.2002. They maintain that the district applied the incorrect staffing standard to determine whether the relevant program, known as the "core group," had space and that the teaching staff actually had time to help Mia. Again, we disagree.

Section 22–36–101(3)(a), C.R.S.2002, requires a school to allow a child who is not a resident of the district to enroll in that school, unless "[t]here is a lack space or teaching staff within a particular program or school requested, in which case, priority shall be given to resident students applying for admission to such program or school."

It was under the aegis of this statute that Mia was allowed to enroll in Willow Creek for her third and fourth grade programs, and the district relied upon this statute in denying her request to enroll in the fifth grade program.

The district's regulation provides that a program shall be considered closed to any nonresident if that enrollment would exceed the district's staffing standard. This standard for special education programs does not limit the number to be enrolled for special education programs generally. Instead, it limits the number for each of eight specific special education programs, including "learning disabled" and "ILC."

The parties stipulated to a definition of the core group, and the Bradshaws produced evidence of the actual demands on Willow Creek's special education teaching staff. Further, the record contains conflicting evi-

dence whether Mia was properly categorized as a learning disabled or an ILC student. This conflict, however, is irrelevant here.

According to the admission appeals committee meeting minutes, enrollment in the learning disabled program and the ILC program exceeded the nonresident enrollment limits established by the district's regulations. The fact that these programs were beyond capacity is further confirmed by an affidavit presented to the court in support of the district's motion.

Moreover, the Bradshaws' assertion that the number of students in the core group had not increased is irrelevant. The state staffing standards then in effect, *see* Dep't of Education Rule 7.02(1), 1 Code Colo. Regs. 301–8, had no direct applicability to the core group, itself. Rather, those standards applied to teacher-student ratios. And the district's evidence was that the teacher assigned to the core group also had other teaching responsibilities, so that this teacher's total caseload exceeded the maximum caseload established for special education teachers. This being so, the statute authorized the district to deny reenrollment to Mia, who was then a nonresident.

We conclude, therefore, that the Bradshaws did not show the existence of any factual issue concerning this subject. *See Mohr v. Kelley*, 8 P.3d 543 (Colo.App.2000). Accordingly, the trial court did not err in granting summary judgment on the Bradshaws' claim based on §§ 22–32–116(2)(b) and 22–36–101(1)(b).

## III.

■ The Bradshaws' claim based on IDEA is derivative in the sense that the only basis for this claim is their assertion that the district violated each of the two state statutes considered above. Hence, because we have concluded that the district violated neither of these statutes, this claim based upon the IDEA must necessarily fail.

## IV.

The Bradshaws also contend that they and Mia were deprived of due process. They assert that the admission appeals committee meeting procedures were unfair because the district offered additional information at that meeting, they were not given an opportunity to respond, and consequently, they did not have sufficient notice of the issue to be determined. We disagree.

■ Procedural due process imposes constraints on governmental decisions that deprive individuals of constitutionally protected interests. *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *Whiteside v. Smith*, 67 P.3d 1240 (Colo.2003). Due process is a flexible standard, but at a minimum, it requires notice and a fair opportunity to be heard. *Vashone–Caruso v. Suthers*, 29 P.3d 339 (Colo.App.2001).

Here, the record does not contain a transcript of the admission appeals committee's meeting. In moving for summary judgment, however, Mr. Bradshaw submitted an affidavit stating that he had attended the meeting and that two named individuals did most of the talking during the meeting. Mr. Bradshaw stated that one such individual provided information concerning the special education and mainstream education enrollment at Willow Creek, declared that Mia needed services from the ILC program, which is one of the district's special education programs, and stated that the ILC program was full.

■ According to the district's interrogatory responses, the only persons in attendance at the meeting were the committee members, Mr. Bradshaw, and the district's staff counsel. One individual referred to in the Bradshaw affidavit was identified in the district's interrogatory responses as a voting member of the committee. The other individual submitted an affidavit, which stated that, as the coordinator of planning and interagency relations for the district, she chairs the committee that reviews admission appeals, including the committee that reviewed Mia's appeal. Thus, the person whom the Bradshaws describe as a representative of the district was actually a member of the committee, who was stating the basis for her decision in response to the Bradshaws' appeal. As such, no procedural due process violations of the nature asserted by the Bradshaws occurred.

## V.

The Bradshaws next contend that the trial court erred in granting summary judgment on their claims under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 (2002), and the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, et seq. (2002). They maintain that limiting the number of nonresident students requesting special education is an illegal quota, that Mia's disability was not a bona fide barrier to interdistrict enrollment, and that Mia was otherwise qualified to enroll at Willow Creek. We disagree.

The Rehabilitation Act provides, "No otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency...." 29 U.S.C. § 794(a). A program or activity includes operations by local educational agencies. 29 U.S.C. § 794(b)(1)(A), (2)(B).

▪ A person is otherwise qualified if he or she is able to meet all of a program's requirements in spite of his or her disability. *Southeastern Cmty. Coll. v. Davis,* 442 U.S. 397, 406, 99 S.Ct. 2361, 2367, 60 L.Ed.2d 980 (1979); *Bellus v. State,* 843 P.2d 119 (Colo. App.1992).

Elementary schools must provide a FAPE to each qualified disabled person in the recipient's jurisdiction. 34 C.F.R. § 104.33(a). The Rehabilitation Act's definition of "appropriate education" generally conforms to the FAPE standards established under IDEA. 34 C.F.R. § 104.33(b); 34 C.F.R. pt. 104, app. A; *see* 20 U.S.C. § 1401.

Under the ADA, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by that entity. 42 U.S.C. § 12132 (Title II of the ADA).

Title II of the ADA adopts the appropriate public education standards of Section 504. *See* 28 C.F.R. §§ 35.103, 35.130; 34 C.F.R. § 104.33; Office of Civil Rights Policy Letter, 20 IDELR 134 (Oct. 7, 1993). Thus, our analysis of the Bradshaws' claims under both statutes is the same.

Here, the district's staffing standards for special education programs establish a target capacity and a number at which each program closes to nonresident enrollment. The district acknowledges the target capacity is greater than the close-off number for nonresident enrollment, which is necessary, it asserts, to allow for an increase in the number of resident students in the program.

The district accepted disabled nonresident students on a first-come, first-served basis for spaces available; it did not ban admission of all disabled nonresident students. The trial court found that the district appropriately gave priority to its residents.

In our view, the relevant program or benefit in this case must necessarily take Mia's disability into account. By seeking enrollment at Willow Creek, the Bradshaws requested the district to provide Mia access to its special education programs and to provide her with FAPE as required by IDEA, 20 U.S.C. § 1401. *See Tepley v. Pub. Employees Ret. Ass'n,* 955 P.2d 573 (Colo.App. 1997)(claim for benefits due because of a disability is not a claim for actionable discrimination under the ADA); *accord McDonald v. Massachusetts,* 901 F.Supp. 471 (D.Mass.1995)(workers' compensation claimant failed to state a claim under ADA where he argued entitlement to benefits on account of his disability).

Of course, the district is obligated to provide special education to disabled students within its jurisdiction, and this obligation is potentially limitless. *See* 34 C.F.R. § 104.33(a). However, we distinguish that obligation from the obligation to accept disabled students from outside the district when it has available space and teaching staff under the interdistrict choice statute, § 22–36–101, et seq. This latter obligation is limited by the district's resources and is subject to the district's primary obligation to provide services to its residents.

▪ We thus reject the Bradshaws' contention that limiting the number of nonresident students requesting special education constitutes the adoption of an illegal quota.

The Bradshaws' reliance on rulings by the Office of Civil Rights does not require a

different result. Those cases are distinguishable because they deal with districts that had categorically denied nonresident disabled student transfers or refused to offer a full range of special education services. *See Chattanooga Pub. Sch. Dist.*, 20 Indiv. with Disabilities Educ. L. Rep. 999 (Office of Civil Rights 1993)(school's selection criterion required applicants have the capacity to function without certain special education services); *San Francisco Unified Sch. Dist.*, 16 Indiv. with Disabilities Educ. L. Rep. 824 (Office of Civil Rights 1990)(school required parents of disabled student to waive district's obligation to provide any special education services); *Fallbrook Union Elementary Sch. Dist.*, 16 Indiv. with Disabilities Educ. L. Rep. 754 (Office of Civil Rights 1990)(school conditioned transfer for nonresident disabled students on their withdrawal from special education programs).

Given this conclusion, we need not address the Bradshaws' remaining contentions.

The judgment is affirmed.

Judge CARPARELLI and Judge HUME * concur.